TOWN OF LANGLADE, Respondent, vs. CROCKER CHAIR COMPANY, Appellant.

*April 9—May 11, 1926.*

*Taxation: Of improvements on real estate: Temporary private railroad constructed of leased materials: How assessed.*

Where a company constructs a private railroad upon land owned by it, using in the construction thereof rails and track materials held by it under lease, the rails and track materials so used are part of the real estate for taxation purposes, and a tax on them as personal property is invalid.

APPEAL from a judgment of the circuit court for Langlade county: EDGAR V. WERNER, Circuit Judge. *Reversed.*

For the appellant there was a brief by *Collins & Collins* of Sheboygan, and oral argument by *Wm. B. Collins.*

For the respondent the cause was submitted on the brief of *Eberlein & Larson* of Shawano.

ROSENBERRY, J. The record in this case presents but one question. Where a company constructs a private railroad upon land owned by it, using in the construction thereof rails and track materials held by it under lease from another company, are the rails and track materials used a part of the real estate for tax purposes or are they to be deemed personal property for the purposes of taxation? Under the terms of the lease it was agreed that the lessor should remain the owner of the materials and that the lessee should not sublet, sell, loan, or destroy any part thereof. The defendant company in the year 1921 and for ten years prior thereto had operated a private railroad used for the purpose of bringing logs to the mill of the company, and in 1921 the defendant company was the owner of about fifty million feet of timber still uncut and it was proposed to use the private logging railroad for the purpose of transporting the timber from the woods to the mills of the

defendant. In the year 1921 the assessor of the town of *Langlade* assessed the value of the rails and materials lying in section 15 at the sum of $1,600, in section 16 at $1,600, in section 21 at $3,200, in section 22 at $2,400, in section 28 at $3,200, in section 33 at $3,200; making a total valuation of $15,200. Upon this valuation a tax of $623.96 was levied, the defendant refused to pay the tax, the town treasurer of the town of *Langlade* attempted to return the tax as delinquent, but the county treasurer refused to accept such a return and refused to credit the town treasurer with the tax because of the manner in which the assessment was made. He was of the opinion that there would be no way by which the county could enforce collection of the tax. The town of *Langlade* paid to the county all of the county and state taxes for that year, and after the county treasurer refused to permit this tax to be returned delinquent made demand upon the defendant, and after its refusal to pay brought this action.

It is the contention of the defendant that the private logging railroad in question should have been assessed as improvements upon the real estate and not as personal property. Down to 1917 real property was defined by statute as follows:

"Section 1035. The terms 'real property,' 'real estate' and 'land,' when used in this title, shall include not only the land itself, but all buildings, fixtures, improvements, rights and privileges appertaining thereto."

"Section 1036. The term 'personal property,' as used in this title, shall be construed to mean and include toll bridges, saw logs, timber and lumber, either upon land or afloat; steamboats, ships and other vessels, whether at home or abroad; buildings upon leased lands, if such buildings have not been included in the assessment of the land on which they are erected."

In the case of *State ex rel. Hansen S. Co. v. Bodden* (1917), 166 Wis. 219, 164 N. W. 1009, it was held that

a building on leased lands did not appertain to the realty within the meaning of the statute and must be taxed as personalty. This allowed the taxpayer to use the amount of taxes levied on account of buildings standing on right of way as an offset in the payment of his income tax.

The legislature of 1917 amended the section by adding thereto:

"When one person shall own the land and another shall own the buildings, fixtures, improvements, rights or privileges on the land, the tax shall constitute a lien on the entire property and the owner of the land shall have a lien from the time as of which such assessment was made. Provided that taxes paid upon buildings, fixtures, improvements, rights or privileges appertaining to the land upon which situated, shall not be used as an offset against income taxes under section 1087m—26 of the statutes."

The definition of "personal property" was likewise amended.

In 1919 the legislature again changed sec. 1035 (now sec. 70.08) to read as follows:

"The terms 'real property,' 'real estate' and 'land,' when used in this title, shall include not only the land itself but all buildings, including buildings on leased land and all fixtures, improvements thereon, rights and privileges appertaining thereto, and also private railroads and bridges."

It would seem to require no argument to show that by omitting "buildings and improvements upon leased land" from the section defining personal property and by including them under the section defining real property, real estate, and land, the legislature intended thereafter that buildings and improvements on leased lands should be included as a part of the real estate for the purposes of taxation. No qualifications were made, and the fact that the railroad right of way was not of a definite width but was of somewhat temporary character and construction and for the convenience of the owners authorized no exception to

be made. The legislature intended that such improvements should be assessed as a part of the realty and not as personal property. Its purpose was clear. It did not propose that taxes upon such property should be used as an offset against income taxes. The taxing officers failed to follow the clear statutory direction, no valid tax was levied, and as a consequence this action cannot be maintained. We see no reason why the statutes relating to reassessment might not have been availed of. There certainly is no authority for maintaining an action to collect a tax which the town had no authority to levy in the manner it did.

*By the Court.*—Judgment appealed from is reversed, and cause remanded with directions to dismiss the plaintiff's complaint.