Argued June 18; reversed October 20; rehearing denied
November 17, 1942

# FIRST NATIONAL BANK OF PORTLAND *v.*
# MARION COUNTY ET AL.

(130 P. (2d) 9)

Before KELLY, Chief Justice, and BAILEY, LUSK,
RAND, ROSSMAN and BRAND, Associate Justices.

*V. V. Pendergrass* and *R. R. Bullivant* (Pendergrass, Spackman & Bullivant), all of Portland, for appellant.

*Miller B. Hayden*, District Attorney, of Salem (George L. Belt, of Salem, on the brief), for respondents Marion county, A. C. Burk, and R. Shelton.

*Ralph R. Bailey* and *James G. Smith*, Assistant Attorneys General, on the brief, for respondents Earl L. Fisher, Charles V. Galloway, and Wallace S. Wharton, as members of State Tax Commission.

*Platt, Henderson, Warner & Cram*, of Portland, for United States National Bank of Portland, amicus curiae.

BAILEY, J.  This suit was instituted by The First National Bank of Portland against Marion county, the sheriff and the assessor of Marion county, and the individual members of the state tax commission, to enjoin the foreclosure of an alleged tax lien against property owned by the plaintiff, and for a decree declaring the assessment of the tax null and void. From a decree in favor of the defendants the plaintiff has appealed.

The property here involved, which was attempted to be assessed by Marion county, consists of banking fixtures and equipment located on the first and mezzanine floors and in the basement of the First National

Bank building in Salem, Oregon. The purported tax lien covers attempted assessments of such property for the years 1929 to 1939, inclusive. The banking fixtures and equipment were assessed as real property, to the plaintiff's vendor and later to the plaintiff. The land on which the building is located, together with the building, was during those periods assessed as real property to T. A. Livesley, Inc., an Oregon corporation, the owner of the fee.

■ National banks are agencies of the United States, created under its laws to promote its fiscal policies, and the property of such banks may not be taxed under state authority except as Congress consents, and then only in conformity with such restrictions as Congress may impose: 12 U. S. C. A., § 548; *First National Bank of Guthrie Center v. Anderson*, 269 U. S. 341, 70 L. Ed. 295, 46 S. Ct. 135. Congress has not consented to the taxation by states of the personal property of national banks; hence the banking fixtures and equipment involved herein, if taxable at all by the state of Oregon as the property of national banks, may be taxed only as real property.

On January 22, 1927, First National Bank in Salem, a national banking association, leased from T. A. Livesley, Inc., for a period of twenty-five years, "the first story and mezzanine floor in the rear or south end" of an eleven-story building, "together with convenient space for a vault, stairway, corridor and lavatory in the basement thereof, and ingress and egress thereto," for the purpose of conducting a general banking business. In a supplemental agreement entered into February 19, 1927, it was provided that "the said lessee is empowered and authorized to remove from said premises so leased all furniture and mov-

able equipment and all improvements and furnishings placed in said premises by said lessee, including oak and walnut woodwork, marble work, lighting fixtures, bronze and iron grillwork, vault doors and all other vault equipment, and the same shall not be considered for the purposes of such lease as fixtures.'' The premises leased to First National Bank in Salem comprised the entire ground floor of the structure known as the First National Bank building, with the exception of that part thereof used as a general lobby and entrance to the upper floors of the building.

Shortly after entering into this lease, First National Bank in Salem proceeded to install in the leased premises various trade fixtures, including counters, desks, tellers' cages, wickets, partitions, files and lighting fixtures, a vault door and vault equipment, including safe-deposit boxes, also marble work, including marble counters and check desks, benches and wainscoting on the vestibule walls.

After conducting a banking business on the leased premises for five or six years, First National Bank in Salem went into liquidation. Sometime during the summer of 1933 The First National Bank of Portland, plaintiff herein, purchased from First National Bank in Salem certain assets of the latter bank, including notes, bonds, bank accounts, furnishings and banking equipment. Among the assets so purchased were the following:

> ''8 upright steel lockers
> 2 lobby benches
> 2 marble and bronze glass top lobby check desks
>    approximately 3' 2'' x 8' 8''
> 1 drinking fountain
> 3 large and 2 small chandeliers

All cage and counter fixtures, comprising 8 marble front, glass and bronze top cages, with returns, partitions, shelving, backs and doors, and approximately 70 lineal feet of marble front and top counter railing, together with doors, gates and glass plate, forming a part of such fixtures; also safe-deposit booths, bookkeeping room partitions, and all wainscoting, both marble and wood, and mezzanine rail partition, consisting of metal, wood and glass paneling.

One electric wall clock

1 12-inch Herring Hall Marvin Safe Co. circular vault door, four movement time lock, together with frame, casings and architraves.

1 9-inch emergency entrance vault door with Sargent and Greenleaf, 3 movement time lock, together with frame and casings.''

The plaintiff is a national banking association with its principal place of business in Portland, Oregon. It operates a branch bank in Salem in the quarters formerly occupied by First National Bank in Salem, which premises on September 25, 1933, it leased from T. A. Livesley, Inc., for a period of ten years with an option for ten additional years. The leasing agreement contains this provision:

''The lessee has purchased from the First National Bank in Salem all the fixtures, equipment and appurtenances, of every kind and nature, installed by said bank in the leased premises, including, among other things, all oak and walnut woodwork, marble work, lighting fixtures, bronze and iron grillwork, vault doors and vault equipment. All of said fixtures, improvements or appurtenances of every kind and nature, including any that may be hereafter installed in any portion of the leased premises by the lessee, shall belong to the lessee and may be removed by it at any time,

either prior to the termination of this lease or within a reasonable time thereafter."

In the erection of the First National Bank building, T. A. Livesley, Inc., constructed a vault with concrete walls, ceiling and floor. The vault door was supplied by First National Bank in Salem, and with its frame or vestibule was delivered to the premises as a unit. It was installed in the vault opening by the tenant bank, by placing about two inches of sand and cement (not concrete) between the vault walls and the door frame. The door and its frame or vestibule weighed between fifteen and seventeen tons and could be removed by chipping away the sand and cement between the frame and the main walls of the vault, without injury to the building.

The evidence is to the effect that it is customary for banks to remove such vault doors to replace them or to set them up in new quarters. The installation of vault doors is well described by the opinion in *San Diego Trust & Savings Bank et al. v. San Diego County et al.*, 16 Cal. (2d) 142, 105 P. (2d) 94, 133 A. L. R. 416.

Chandeliers furnished by the tenant bank were fastened to the ceiling in the usual manner required by their varying sizes. Much of the banking equipment was fastened to the floor with anchors. or bolts of bronze or other metal and was readily removable by unscrewing or cutting the bolts. A large part of the equipment has been moved about by the plaintiff. All, or practically all the banking fixtures and equipment involved herein can be removed without any substantial injury to the building.

At the time First National Bank in Salem leased from T. A. Livesley, Inc., that part of the building which it later occupied, the interior thereof was un-

finished. The bank at its own expense laid a marble floor, painted and decorated the walls and ceiling and installed marble wainscoting. Whether the assessor attempted to assess the marble floor and the painting and decoration of the walls and ceiling to the plaintiff and its vendor does not appear. In relation to this matter the plaintiff in its brief states:

"* * * In so far as the painting and decorations are concerned, appellant agrees that they constitute a part of the building and that it has no interest whatsoever in attempting to remove the paint from the walls. . . .

"In other words, if the county wants to assess the painting and decorations and the marble which appellant's predecessor may have placed upon the floor, it should do so because they constitute a part of the building and such assessment should be to the owner of the building."

For the year 1929 the assessor of Marion county made an assessment against T. A. Livesley, Inc., covering "fr. Lots No. 1 and 2, Block No. 34, value of all lots $20,800.00, value of improvements on town lots, $90,000.00, total value of taxable property as equalized by board of equalization, $110,800.00." Immediately after the name of T. A. Livesley, Inc., appeared the following: "First National Bank in Salem, fr. Lots No. 1 and 2, Block No. 34, value of all lots $............, value of improvements on town lots $25,000.00, total value of taxable property as equalized by board of equalization. $25,000.00."

That notation was continued up to and including the tax year 1933-1934. From 1935 to 1939, inclusive, the property formerly assessed to First National Bank in Salem was taxed under the same description to The First National Bank of Portland, with the

exception that for the years 1937 to 1939, inclusive, the valuation was reduced from $25,000 to $15,000.

On July 6, 1939, pursuant to § 110-820, O. C. L. A., the sheriff of Marion county as tax collector amended the description in the assessment against the banks to read as follows: ''All fixtures, equipment and appurtenances of every kind and nature, including among other things, all oak and walnut woodwork, marble work, lighting fixtures, bronze and iron grillwork, vault doors and vault equipment affixed to the premises described as follows: Fractional part of lots 1 & 2 block 34, Salem Original.''

The assessments for the years 1929 to 1934, inclusive, were made by Oscar Steelhammer, county assessor. In 1935 Mr. Steelhammer died, and R. Shelton, chief deputy assessor since 1918, was appointed as his successor and has continued in office. Mr. Shelton as a witness was unable to state what property of First National Bank in Salem had been included in the assessments made by Mr. Steelhammer. After Shelton became assessor he continued the assessments under the same designation used by his predecessor in office, without personally checking on the property assessed. He reduced the valuation in 1937, as above noted, because he was of the opinion that The First National Bank of Portland had not acquired all the property formerly assessed to First National Bank in Salem.

The plaintiff contends that the relief sought by it should have been granted for the following reasons: (1) That the banking fixtures and equipment attempted to be taxed by the defendant county were trade fixtures, hence personal property and therefore not taxable to a national bank; (2) that the tax laws of the state make no provision for the assessment of

trade fixtures as real property to the owner thereof who is a lessee of the premises where such fixtures are used; and (3) that the description of the property sought to be taxed is so indefinite and uncertain that the various assessments here involved are, in their entirety, void.

Unless authority be found in the tax laws to assess trade fixtures as real property to the tenant in possession of the premises where such fixtures are used, the assessment in the instant case must be declared void. We shall therefore first consider the second reason advanced by the plaintiff as above noted. The assessments here in question covered, as heretofore stated, a period from 1929 to 1939, inclusive. Attention will necessarily be given first to the laws in effect at the time the first such assessment was made.

Section 69-102, Oregon Code 1930, is in part as follows:

"The terms 'land,' 'real estate' and 'real property,' as used in this act, shall be construed to include the land itself, whether laid out in town lots, or otherwise, above and under water, all buildings, structures, substructures, superstructures and improvements erected upon, under or above, or affixed to the same, and all rights and privileges thereto belonging or in any wise appertaining; also any estate, right, title or interest whatever in land or real property, less than the fee simple".

That section further provides that in all cases in which the grantor of land has, in the deed conveying the same, reserved unto himself "the right to enter upon and use any or all of the surface ground necessary for the purpose of exploring, prospecting for, developing or otherwise extracting" minerals, gases or oils,

such reservation "shall be deemed, and is hereby declared to be, an estate and interest in land". It also declares that all franchises and privileges granted pursuant to any law or municipal ordinance and owned or used by any person or corporation, other than the right to be a corporation, all water rights, water power, and all "mines, minerals, quarries, fossils, and trees in or upon the land" are interests in land.

By § 69-109, Oregon Code 1930, it is provided that lands held on a contract for the purchase thereof and belonging to the state, county or municipality, and school and other state lands, shall be considered for the purpose of taxation as the property of the person so holding the same, and the improvements thereon shall be considered as real property for all purposes of taxation, and as the property of the person so holding the same.

It is specifically provided by § 69-211, Oregon Code 1930, that whenever any mineral, gas, coal, oil or other similar interests in real estate are owned separately and apart from and independently of the rights and interests owned in the surface of real estate, such interests may be assessed and taxed separately from such surface rights and may be sold for taxes in the same manner and with the same effect as other interests in real estate are sold for taxes.

Section 69-231, Oregon Code 1930, provides the mode of assessing property for taxation. By that section the assessor is required to enter upon the assessment roll a full and complete assessment of all property in his county on March 1 of each year, "including a full and precise description of the lands and lots owned by each person therein named, on March 1 of said year, . . . which description shall correspond with the plan or plat of any town laid out or recorded;

and said lands or town lots shall be valued at their true cash value, taking into consideration the improvements on the land and in the surrounding country, and any rights or privileges attached thereto or connected therewith''. The section then provides how the true cash value of property shall be ascertained. It further declares that no assessment shall be invalidated by a mistake in the name of the owner of the real property assessed or by the omission of the name of the owner or by the entry of a name other than that of the true owner, if the property be correctly described; ''and, provided further, where the name of the true owner, or the owner of record, of any parcel of real property shall be given, such assessment shall not be held invalid on account of any error or irregularity in the description; provided, such description would be sufficient in a deed of conveyance from the owner; or on account of any description upon which, in a contract to convey, a court of equity would decree a conveyance to be made.''

By § 69-242, Oregon Code 1930, the assessor is required to set down in the assessment roll a description of each tract or parcel of land to be taxed. That section further provides how land shall be described.

Section 69-245, Oregon Code 1930, specifies that an undivided interest in land may be assessed and taxed as such.

The procedure to foreclose delinquent real property taxes is prescribed by § 69-807, Oregon Code 1930. The summons in such proceedings must contain a description of the property and the name of the owner or owners of the legal title thereof as the same appears of record, if known.

Section 69-820, Oregon Code 1930, makes further provision in regard to the procedure on foreclosure,

the judgment which shall be entered and the method of sale. It states, among other things, that:

"* *· * The court shall give judgment and decree for such taxes, assessments, penalties, interest and costs, as shall appear to be due upon the several lots or tracts described in said summons and application for judgment and decree, and such judgment and decree shall be a several judgment against and lien upon each tract or lot, or part of a tract or lot, for each kind of tax or assessment included therein".

The same section thus provides for the sale of real property on tax foreclosure:

"At such sale the person offering to pay the amount due on each tract or lot for the least quantity thereof shall be the purchaser of such quantity, which shall be taken from the east side of such tracts or lot, and the remainder thereof shall be discharged from the lien. In determining such piece or parcel of such lot or tract, a line is to be drawn due north and south, far enough west of the eastern point of tract to make the requisite quantity."

Certain amendments of the tax laws were made by the legislature in 1935. The only essential change in the first part of § 69-102, *supra,* thereby effected was that, after the word "improvements," the following words were added: "machinery, equipment or fixtures". In the last part of the section the provision as to severable interests was expanded to declare that the ownership of standing timber, with a right to enter upon the ground to remove such timber, is an interest in real property: § 69-102, Oregon Code 1935 Supplement.

Section 69-211, *supra,* was also amended, to provide that, "Whenever any standing timber, or any

mineral, coal, oil, gas or other severable interest in or part of real property is owned separately and apart from the rights and interests owned in the surface ground of such real property," such interest may be assessed and taxed separately from the surface rights "and may be sold for taxes in the same manner and with the same effect as other interests in real property are sold for taxes": § 69-211, Oregon Code 1935 Supplement.

The other sections of Oregon Code 1930 hereinabove cited and discussed were not substantially changed until after the making of the last of the assessments here involved.

It is contended by the defendants that the plaintiff and its predecessor in ownership of the trade fixtures here in question owned an interest in the real property where such fixtures were maintained. That would amount to an interest not only in the bank building, but also in the land on which the building stands. The nature of such interest, whether a leasehold or something else, is not made clear by the defendants in their argument. They assert in their brief, however, that, "Under statutes similar to those in Oregon, courts almost universally have held that the interest of the lessee is taxable to the lessee as real property"; and numerous cases are cited by them in support of that statement.

The first of such cases is *Aberg v. Moe*, 198 Wis. 349, 224 N. W. 132, 226 N. W. 301. The Wisconsin statute involved therein was, as stated by counsel for the defendants, similar to that of Oregon. The Wisconsin statute, however, provided that "all buildings on lands under lease or permit, including buildings located on railroad right of way or on other lands not subject to local assessment, shall be assessed as real estate to the

owners of such buildings.'' The facts set forth in the opinion indicate that the land was not taxable. The property had been leased and a building constructed thereon, and the assessor attempted to assess the leasehold interest in the property. In passing upon the right to assess such interest, the court said:

''Under the provisions of these statutes throughout the history of the state lands have been assessed to the owner. No doubt the legislature might empower the assessor to assess the leasehold interest against the lessees and so divide up the property for the purposes of taxation. That, however, has never been the policy of our law so far as we know except for a brief period when the state undertook to tax the respective interests of the mortgagor and mortgagee separately. The entire property, including all interests in it, is assessed to the owner of the property as defined in the statute, and the right of every person claiming any interest in the property subordinate to the fee, whether under lease, contract, or otherwise, is extinguished if the property be sold in the exercise of the taxing power. If we were now to hold that the interest of the lessee under a lease should be separately assessed, how could it be held in other cases that where assessed to the owner the interest of the lessee could be cut off? If a lease creates a separable taxable interest in the lessee in one case, it does in all cases. The fact that the fee is exempt in one case and not in another does not change the nature of the lessee's interest. A holding to that effect would involve a complete reversal of the public policy of this state throughout its history, and if a change of that kind is to be brought about it should be done by legislative action, not by a judicial holding made to fit a particular case.''

In the case of *In re Indian Territory Illuminating Oil Company*, 43 Okla. 307, 142 P. 997, which also is

cited by the defendants herein in support of their argument, it was held that gas leases were not subject to taxation as real property or otherwise. The court thus reasoned:

"The provisions of the statute already adverted to provide a complete system for the levying of all taxes upon an *ad valorem* basis; and we can find no warrant in any of them for levying an *ad valorem* tax upon an oil and gas lease as such. Generally, an oil and gas lease, a school land lease, or a lease of any sort, for that matter, undoubtedly is property. But, as we have heretofore stated, property itself is a creature of the law, and the classification thereof for purposes of taxation belongs exclusively to the legislative department. * * *

"* * * It is also observable that in many jurisdictions various interests in real property for purposes of taxation are made severable and assessable in the names of the owners of the respective interests. That, however, is not the case in this state. Under our system of taxation, real property, which for purposes of taxation means the 'land itself, all buildings, stocks, improvements, or other fixtures of whatsoever kind thereon and all rights and privileges thereto belonging or in any wise appertaining, and all mines, minerals, quarries or trees under or on the same,' must be assessed in the name of the owner of the land."

See also, in this connection, *State v. Shamblin*, 185 Okla. 126, 90 P. (2d) 1053.

In *Jetton v. University of the South*, 208 U. S. 489, 52 L. Ed. 584, 28 S. Ct. 375, cited by the defendants, the statute of Tennessee, in which state the case arose, provided that the interest of a lessee should be assessed to the owner of such interest separately from other interests in the real estate. It was contended by the university that the property owned by it was tax-free

and that therefore the legislature could not provide for the assessment of a leasehold interest in its property. The court held that the legislation in question was valid, and that because it specifically provided that a leasehold interest should be assessed to the lessee the university could not complain.

The cases of *City of Chicago v. University of Chicago*, 302 Ill. 455, 134 N. E. 723, 23 A. L. R. 244, and *Moeller v. Gormley*, 44 Wash. 465, 87 P. 507, are the remaining authorities cited by the defendants to the proposition that under statutes similar to those of Oregon, "courts almost universally have held that the interest of the lessee is taxable to the lessee as real property." As to the former of these cases, the Illinois statute provides, according to the opinion therein, that, "When real estate which is exempt from taxation is leased to another whose property is not exempt, and the leasing of which does not make the real estate taxable, the leasehold estate and appurtenances shall be listed as the property of the lessee thereof, or his assignee, as real estate."

*Moeller v. Gormley*, supra, involved the taxation of a lease of state tidelands, and the court in that case, under a statute similar to § 69-102, Oregon Code 1930, did hold that although the fee of the land was exempt from taxation, a leasehold interest in the land could be taxed.

The authorities on which the defendants rely do not support their contention that the leasehold interest in real property should be assessed to the lessee as real property. Quite to the contrary, all those cases, with the exception of *Moeller v. Gormley*, supra, hold that if the statute does not specifically provide for assessing separate interests in real property, such

property should be assessed as a unit to the owner of the fee. Moreover, the facts in *Moeller v. Gormley*, supra, differ materially from those in the case at bar, for in that instance the land itself was not assessable and there was not an assessment of the fee to the owner thereof and in addition an assessment of a leasehold interest to the lessee.

In 26 R. C. L., Taxation, § 111, page 136, we find the following statement:

"* * * Property is, however, a word of most general import and includes every kind of right and interest, capable of being enjoyed as property and recognized as such, upon which it is practicable to place a money value. Land or any estate or interest therein is undoubtedly property; but inasmuch as a parcel of land is generally taxed as a unit and the different estates or interests therein are not separately assessed, the question of what interests in real estate constitute property does not frequently arise. When, however, the fee of a parcel of land is exempt from taxation and a lesser estate or interest therein is not, such estate or interest may be taxed if it is of such a character as to constitute property."

And in § 318, at page 360 of the same text, this is said:

"Whether taxes on real estate are assessed upon the real estate itself, regardless of ownership, or are assessed upon individuals by reason of their ownership, it is not in most jurisdictions the policy of the law to require the assessors to tax the different estates and interests which may exist in a single parcel of land to the respective owners thereof, but the assessment is a unit upon the sum of the interests."

See also, in this connection, *Donovan v. City of Haverhill*, 247 Mass. 69, 141 N. E. 564, 30 A. L. R. 358.

This court in *Nehalem Timber Company v. Columbia County*, 97 Or. 100, 189 P. 212, 191 P. 318, also laid down the rule that real property should be assessed as a unit to the owner of the legal estate rather than to the owners of separate interests in it. In that instance the land was owned by the federal government, which had entered into a contract to sell certain timber thereon to the plaintiff timber company. The assessor of the defendant county attempted to assess the timber to the plaintiff as real property. That was done before provision was made by statute for the separate assessment of timber. The court, after quoting the Oregon statute defining real property, which was practically identical with the similar statute in effect in 1929, observed:.

"For tax purposes this legislation inseparably yokes the timber to the land on which it is growing. The statute was further amended in 1919, but as only the taxes of 1916 are here involved, no notice will be taken of the latter legislation. It is a general principle that taxes follow the legal title, and this seems to be the sense and spirit of this statute. It refers to the land itself, which includes the growing timber thereon. The taxing power is not concerned with indefinite equities. It is said in section 3586, L. O. L., as so amended, that—

" 'No assessment shall be invalidated by a mistake in the name of the owner of the real property assessed, or by the omission of the name of the owner, or the entry of a name other than that of the true owner, if the property be correctly described.'

"All of which indicates that the legal estate alone is the subject of taxation."

The statutes of Oregon relating to taxation make no provision for the assessment of a leasehold interest

to the lessee. In other words, various interests in real property are not, for the purpose of taxation, made severable and assessable in the names of the owners of the respective interests, except in certain specified instances, such as those mentioned by § 69-211, Oregon Code 1935 Supplement, and § 69-245, Oregon Code 1930, as well as "improvements made by persons on lands claimed by them under laws of the United States, the fee of which is still vested in the United States": §§ 69-103 and 69-232, Oregon Code 1930. According to these last two sections, such improvements are classified as personal property.

A further answer to the defendants' argument that the assessments against the banks could be upheld as assessments against their leasehold interests is the fact that there was no attempt to identify the assessed property as leasehold interests.

The defendants make the further assertion that the plaintiff has, and First National Bank in Salem had, an interest in the real property because the trade fixtures used by them in conducting their respective banking businesses were attached to the First National Bank building. No attempt is made to define the interest so owned. The assessor of Marion county testified that the only instance, within his knowledge, of assessing trade fixtures in Marion county to the tenant of leased premises as real property, was the assessment of the plaintiff's equipment and that of First National Bank in Salem; and that in all other cases trade fixtures were assessed by him as personal property.

The defendants contend that it does not make any difference in ordinary cases whether trade fixtures are assessed as personal property or as real property,

because the amount of taxes levied would be the same in either instance. In the case at bar, since the trade fixtures can be assessed against a national bank, if at all, only as real property, an exception has been made by the assessor and they have been classified as real property.

Section 69-726, Oregon Code 1930, provides that all taxes levied against personal property "shall be a debt due and owing from the person against whom said taxes are charged for said personal property", and if such taxes are not paid before becoming delinquent or upon demand of the assessor, the county leving them "may, in addition to the remedies now provided by statute for the collection of taxes against personal property, maintain an action . . . against said person against whom said tax has been levied for the collection thereof"; and upon application of the county, writs of attachment shall be issued by the clerk of the court.

By § 69-721, Oregon Code 1930, the sheriff is required, in collecting taxes against personal property, to levy upon sufficient goods and chattels, belonging "to the person, firm, or corporation or association charged with such taxes, if the same can be found in the county, by taking them into his possession, to pay such delinquent taxes".

The owner of real property has no personal liability for taxes assessed against it unless he "has substantially dissipated, destroyed or removed" the value of such property: § 69-901, Oregon Code 1930.

In the cases of *Turner v. Spokane County*, 150 Wash. 524, 273 P. 959, *Town of Langlade v. Crocker Chair Co.*, 190 Wis. 226, 208 N. W. 799, and *Ford Hydro-Electric Co. v. Town of Aurora*, 206 Wis. 489,

240 N. W. 418, it was held that the assessment of certain improvements of real property as personalty instead of realty was null and void.

■ The county assessors of this state may not assess trade fixtures as real or personal property as expediency suggests. If trade fixtures are classified as personal property for the purpose of taxation, they must be taxed, if at all, as personal property, and not as realty. On the other hand, if such fixtures are a part of the real property and are to be taxed as real · property, the assessors have no authority to assess them as personalty. If we were to hold that The First National Bank of Portland owns an interest in the tract of land on which the First National Bank building is located, because it is the owner of certain trade fixtures kept and used by it in that building, and that such interest in the real property should be assessed to the plaintiff bank as real property, then it would follow that in all other instances trade fixtures should be assessed to the owner thereof as real property. If the ownership of trade fixtures creates a separable taxable interest in the realty in one case, it does in all cases.

To require the county assessors to assess all trade fixtures in the names of the owners thereof as real property would impose upon them Herculean tasks and result principally in confusion. The law does not contemplate any such procedure.

■ We are not here passing upon the question of whether the plaintiff's trade fixtures and equipment are real property or personal property within the meaning of those terms as used in our tax law. Nor are we deciding whether or not such trade fixtures and equipment may be taxed to the owner of the legal

estate as fixtures annexed to or improvements of real property. No attempt was made to assess them to the owner of the legal estate. We do hold that under our statutes the various interests in real property for purposes of taxation are not made separable and assessable in the names of the owners of the respective interests except as hereinabove designated.

As there was no authority for the defendant county in this instance to assess the banking fixtures and equipment to the plaintiff as real property, the attempted assessments were void and the relief prayed for by the plaintiff should have been granted. The conclusion which we have reached renders unnecessary a discussion of the other grounds assigned by the plaintiff for a reversal of the decree. The decree appealed from is reversed and the cause is remanded to the circuit court with direction to enter a decree in conformance with this opinion. Costs will not be allowed in this court.

BELT, J., did not participate in the decision or consideration of this case.