Argued September 16, affirmed December 23, 1970, petition
for rehearing denied February 18, 1971

SWAN LAKE MOULDING COMPANY, *Appellant*,
*v.* DEPARTMENT OF REVENUE, *Respondent.*

478 P2d 393
480 P2d 713

*Ernest F. Gordon*, Klamath Falls, argued the cause for appellant. With him on the briefs were William Ganong and Ganong, Ganong & Gordon, Klamath Falls.

  *Richard A. Uffelman,* Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Theodore W. de Looze, Assistant Attorney General, Salem.

  Before O'CONNELL, Chief Justice, and DENECKE, HOLMAN and TONGUE, Justices.

DENECKE, J.

  The plaintiff taxpayer appeals from a decision of the Tax Court affirming the order of the defendant Department of Revenue fixing the true cash value of the taxpayer's land at $563,850. 4 OTR Adv Sh 27. The county assessor had fixed the value at $639,150 and on review the County Board of Equalization lowered the value to $181,955. Testifying before the Tax Court, one appraiser for the taxpayer fixed the value at $193,000, the other at $253,000.

  The property is on the outskirts of the city of Klamath Falls and is on the south side of Sixth Street, a well-traveled thoroughfare. On the north side is a new shopping center described by the Tax Court as "one of the busiest and most attractive shopping areas in southern Oregon." The Tax Court in its opinion accurately described the taxpayer's property:

    "The plaintiff's property is triangular shaped with 3000 feet of frontage on South Sixth Street. It is 680 feet deep at the widest point and narrows down to 30 feet. The rear of the property is bounded by the Oregon California and Eastern railroad tracks. While the value of the improvements is not involved, various commercial and industrial buildings, including a ready-mix concrete plant, second hand store, moulding plant, and a feed store, are located on the property. Most of the buildings are old and show substantial depreciation; however, a

restaurant and a large motel have been recently constructed on part of the property."

The entire tract contains approximately 20 acres.

The assessor used the market value approach. The sales used for comparison were primarily of the parcels purchased for the shopping center. These sales prices varied. Property fronting on Sixth Street sold at prices ranging from $3.70 to $1.70 per square foot depending on its location. Prices for property not fronting on Sixth Street ranged from $13,000 to $17,000 per acre. The assessor was of the opinion that the taxpayer's land was less desirable than the land across the thoroughfare because of its triangular shape, inferior access, and the presence of railroad tracks at the rear. For this reason he valued the frontage property at $1.00 per square foot and the interior at $10,000 per acre.

The taxpayer's witnesses were of the opinion that sales of land on the north side of the thoroughfare were not comparable sales and the income approach was the most realistic, with the market approach to be used only as a check.

The most important difference between the parties and the appraisers testifying on their behalf is what consideration, if any, is to be given to the long-term leases on substantial portions of the property. Some of the leases had remaining terms of over 30 years. The appraisers testifying for the taxpayer stated that these leases had to be taken into account as they control the income potential and what the highest and best possible use would be if the land were unencumbered is only hypothetical.

The appraiser for the county testified he gave

no effect to the leases. The taxpayer charged that in so doing the appraiser disregarded ORS 308.235, which provides, in part:

> "Taxable real property shall be assessed by a method which takes into consideration the improvements on the land and in the surrounding country and also the use, earning power and usefulness of such improvements, and any rights or privileges attached thereto or connected therewith * * *."

■ The county appraiser and the Tax Court are correct. In fixing the true cash value of land for property tax purposes the effect of existing leases on the value to the owner is disregarded. The basis for such a principle is that the tax is levied upon the land and is a tax upon all the interests into which the land might be divided. Admittedly, a lease might decrease the price which the owner might receive; however, the tax is not merely upon the owner's interest; the tax is upon all the interests in the land, including the leasehold interest. This is so because of the corollary principle that taxes are assessed only against the one having title:

> "The statutes of Oregon relating to taxation make no provision for the assessment of a leasehold interest to the lessee. In other words, various interests in real property are not, for the purpose of taxation, made severable and assessable in the names of the owners of the respective interests, except in certain specified instances * * *." *First National Bank v. Marion County*, 169 Or 595, 612-613, 130 P2d 9 (1942).

Bonbright is of this opinion that the lease and the amount of rent are to be disregarded when appraising for property tax purposes. 1 Bonbright, Valu-

ation of Property, 496 (1937). He illustrates by this example:

"John Doe is the owner of a house and lot. * * *. He mortgages the property to a local bank. He executes a 10-year lease to John Doe, Jr., at the rental of $1 a year. Then assessment time arrives, and he finds himself assessed on the full value of the land. He prepares a petition in abatement * * *. His petition will be denied * * *. It is well settled at common law, and rarely changed by statute, that the mortgagor and the lessor pay the entire tax on the property as if there were no mortgage or lease * * * *"

Judicial decisions have followed this reasoning. *Donovan v. City of Haverhill*, 247 Mass 69, 141 NE 564, 30 ALR 358 (1923) (noted at 24 Colum L Rev 324 (1924)), was very similar to the present case. The facts were:

"At the time the assessors made the valuation and determined the assessments upon the property of the petitioners for 1921, they took into consideration the sale prices of similar parcels of land in the near vicinity, after comparing the availability of such land with the land in question; and in assessing the buildings they took into consideration the original cost thereof, with allowances for depreciation and appreciation and replacement cost. They also knew the terms of all the leases; and after considering what effect, if any, the terms of the leases should have upon the valuation of the property, determined that the owners were not getting the full rental value or return from the property, and that the fact that leases upon parts of the premises would not expire for three, four, twelve and fifteen years, and the fact that the return from these leases then, in 1921, might be less than if the premises were rented from month to month or from year to year, should not for the purposes of taxation be taken into consideration by

them in determining the fair cash value of the property. In determining the fair cash value of the property in 1921 the assessors did not, except as above stated, take into consideration the existing leases." 247 Mass at 70.

The court held:

"Manifestly the entire estate to be taxed may be made up of various tenancies, vested and contingent, as well as leasehold interests, the value of which in many cases it would be impracticable to determine. It is plain a deduction of the surrender value of a long term lease from the market value of the estate, ascertained by a sale of the land free of the lease, in many instances would seriously impair the taxable valuation of the estate considered as a whole; and that the entire estate would escape taxation to the extent of the tax upon the value of the leasehold interest to the estate for the purpose of extinguishment. We do not think a determination of the fair cash valuation of real estate requires the assessors to make such a deduction. * * *." 247 Mass at 72.

To the same general effect and citing the above decision with approval are *In re Property of Pine Raleigh Corporation*, 258 NC 398, 128 SE2d 855, 859 (1963), and *Crossroads Center, Inc. v. Commissioner of Taxation*, 286 Minn 440, 176 NW2d 530, 535-536 (1970). See Annotation, "Outstanding lease as affecting taxable value of property against owner," 30 ALR 361 (1924).

■ The other differences between the county appraiser and the appraisers appearing on behalf of the taxpayer are on matters of judgment such as the future potential of this property and the ability of the area to support the kinds of business which would pay $1.00 per square foot or more for the taxpayer's prop-

erty. The taxpayer's evidence does not demonstrate to us that the assessor was incorrect in his judgment and, therefore, the taxpayer, who has the burden of proof in this case (ORS 305.427), has failed to sustain that burden.

The taxpayer's other contention concerning the service roads we conclude is correctly decided by the Tax Court in its opinion.

Affirmed.

## ON PETITION FOR REHEARING

Ganong, Ganong & Gordon, Klamath Falls, for the petition.

No appearance contra.

DENECKE, J.

■ On petition for rehearing the taxpayer contends that our decision disregards existing leases on the property, contrary to the requirements of ORS 308.235, which provides, in part:

> "Taxable real property shall be assessed by a method which takes into consideration the improvements on the land and in the surrounding country and also the use, *earning power* and usefulness of such improvements, and any rights or privileges attached thereto or connected therewith * * *." (Emphasis added.)

We did not hold that the earning power of the property should be disregarded; however, the income from an existing lease is not by itself determinative of that earning power. It is the potential income to be derived from the highest and best possible use. If the rent reserved in the lease is less than the property is capable of producing, the lessee's interest is more valuable and it is the entire group of interests in the property, lessor's and lessee's, that is valued.

Petition denied.