# IN THE OREGON TAX COURT

## ROCKWOOD DEVELOPMENT CORP.
*v.*
## DEPARTMENT OF REVENUE
(TC 2145)

Karen Saul Stayer, Waggoner, Chapman, Farleigh, Wada & Bogrand, Portland, represented plaintiff.

Dave L. Canary, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Ruling for plaintiff rendered July 30, 1985.

**CARL N. BYERS, Judge.**

This case concerns the value of land which is encumbered by a perpetual easement for the construction, maintenance and operation of three standard radio broadcasting towers, together with the necessary improvements which accompany such towers. The parties, by stipulation and

motions for summary judgment, seek a declaratory ruling of the court on the effect of the easement upon the value of the property. Because the court's ruling on this point will have significant impact on the value to be assessed, the parties have asked for the right to submit evidence of value after consideration of the court's ruling.

The parties have stipulated to the facts. The subject property now consists of 5.9 acres of land located in Eugene, Oregon. In 1949, Eugene Broadcasters, Inc., purchased certain land from George T. Morrill and Anna M. Morrill. In connection with that purchase, they "coincidently" received the grant of easement contained in Exhibit B over a portion of the subject property. Apparently the remaining portion of the subject property was then owned by a Gyneth E. Olson who, 10 days after the Morrill easement, granted a similar easement to Eugene Broadcasters, Inc. (Exhibit A). The Morrill easement covers that portion of the subject property on which are located the three radio broadcasting towers. The Olson easement covers that portion of the property necessary for the guy wires and underground wires which radiate from the towers. The parcels covered by the two separate easements in 1949 are now combined into the single 5.9-acre subject parcel owned by plaintiff.

The easements originally benefited all of the property purchased by Eugene Broadcasters, Inc., from the Morrills in 1949. Due to conveyances of portions of that property to others and the relocation of the radio station, the easements now benefit only Tax Lot 2600, which is not contiguous to the subject property.

By stipulation, the parties have agreed that the easements prevent plaintiff from developing the property in any way which will interfere with the radio transmitting facilities encumbering the property. This means that under the present existing conditions the property cannot be developed for commercial or residential use. Further, plaintiffs cannot unilaterally extinguish the easements.

■      The specific issue presented by the parties' motions is whether the easements in question are easements appurtenant or easements in gross. This issue rests on the following foundation: The general rule is that all of the "bundle of rights" associated with the ownership of real property are

assessed for purposes of ad valorem taxation to the owner of the legal estate. *First National Bank v. Marion County,* 169 Or 595, 612, 130 P2d 9 (1942).

In *Swan Lake Mldg. Co. v. Dept. of Rev.,* 257 Or 622, 478 P2d 393, 480 P2d 713 (1971), the court ruled on what consideration, if any, was to be given to the long-term leases on property. In upholding the assessor's ignoring of the effect of the leases on the value of the property, the court said:

> "In fixing the true cash value of land for property tax purposes, the effect of existing leases on the value to the owner is disregarded. The basis for such a principle is that the tax is levied upon the land and is a tax upon all the interests into which the land might be divided. Admittedly, a lease might decrease the price which the owner might receive; however, the tax is not merely upon the owner's interest; the tax is upon all the interests in the land, including the leasehold interest." *Swan Lake Mldg., supra,* at 625.

This rule arises primarily from the need for administrative ease in the assessment and collection of ad valorem taxes. Although originating in common law, the statutes now provide the basic rule to be interpreted. Oregon's statute, ORS 308.235, provides in part:

> "(1) Taxable real property shall be assessed by a method which takes into consideration:

> "(a) The applicable land use plans, including current zoning and other governmental land use restrictions;

> "(b) The improvements on the land and in the surrounding country and also the use, earning power and usefulness of the improvements, and any rights or privileges attached thereto or connected therewith; and

> "(c) The quality of the soil, and the natural resources in, on or connected with the land, its conveniences to transportation lines, public roads and other local advantage of a similar or different kind."

In construing this statute, Oregon cases have decreed that, unlike leases, consideration must be given to the effect of some easements and other restrictions on the use of property. *Tualatin Development Co. v. Dept. of Rev.,* 256 Or 323, 473 P2d 660 (1970) (open space restrictions); *P.G.E. Co. v. State Tax Com.,* 249 Or 239, 437 P2d 827 (1968) (value of easement rights assessed to owner of rights); and *Marchel v. Dept of*

*Rev.,* 9 OTR 317 (1983) (value of scenic and recreational easement taxable to the state).

■ Why easements should be treated differently than leases or other interests in real property is not clear.[1] Logic and the cases appear to support the defendant's position that easements appurtenant are recognized in assessing interests but easements in gross are not. The reason for this, as indicated by Bonbright, is that the value of the easement appurtenant is added to the value of dominant estate, whereas an easement in gross is an individual right which, in order to be taxed, would have to be specifically and separately assessed. I Bonbright, *Valuation of Property* 497. Thus, if the subject easements are easements in gross, they are to be ignored in determining the value of the subject property. On the other hand, if they are easements appurtenant, their restrictions are to be considered in valuing the subject property.

The distinction between easements appurtenant and easements in gross lies in whether the rights are associated with another parcel or real property. That is, the rights associated with an easement appurtenant are annexed to or associated with another separate dominant property. The easement does not exist separate and apart from the land to which it is annexed. On the other hand, easements in gross are the rights given to a person to use the land of another and are not annexed to or restricted by other property. 25 Am Jur2d *Easements and Licenses* §§ 11 and 12, at 425-427.

Ideally, the written document creating the easement would specify whether it is intended as an easement appurtenant or in gross. In reality, instruments are frequently ambiguous. The courts have consequently developed principles of construction to aid in interpreting granting instruments. Two such rules bear upon this case. The first, as expressed in *Hall v. Meyer,* 270 Or 335, 339, 527 P2d 722 (1974), is that, "[t]here

---

[1] As indicated by I Bonbright, *Valuation of Property* 497:

"Whether these methods of assessment are to be explained on historical or on other grounds, is immaterial for the principles of valuation. They can be justified practically on the ground that the number of assessments is reduced to a fraction of what they would otherwise be, and also that difficult problems of allocation of values are avoided. Why the easement should have received exceptional treatment we are unable to say."

is an extremely strong constructional preference for the finding of an easement appurtenant rather than in gross." The fact that the easement fails to indicate or declare that it is appurtenant is not controlling. *Tusi v. Jacobson,* 134 Or 505, 293 P 587, 283 P 939 (1930).

■     A second rule developed by the courts is that perpetual easements are more likely to be appurtenant than in gross.

> "Normally, such a right is not merely a personal one but, rather, one which is appurtenant to the land: a 'burden upon the land of one for the benefit of another.'" *Braat v. Aylett,* 278 Or 549, 552, 564 P2d 1030 (1977).

The easements in question, which are substantially similar in language, do not say whether they are appurtenant or in gross. Neither easement indicates that the rights conveyed are for the benefit of another parcel of real property. Lacking these indicia of easements appurtenant, they might be considered in gross. On the other hand, both easements are granted as a "perpetual right and easement" which would normally be an easement appurtenant. The Morrill easement (Exhibit B), while not describing a dominant estate, indicates that the grantee "coincidently" purchased adjoining property from the grantor. It may be inferred from this that the parties intended the easement to be appurtenant to that tract of land which was purchased. This inference is reinforced by the condition in the easement which limits entry to the subject property "solely from the triangular tract of land adjoining the above described premises on the East coincidently herewith purchased by the grantee from the grantors."

Defendant argues that by their very nature the easements in question cannot qualify as appurtenant. Relying upon the Restatement of Property § 453, at 2914, defendant argues that the right to maintain radio towers is not related to the use of the dominant property and therefore is not appurtenant. It seems clear, however, that at the time the easement was created the grantee needed the easements in order to use the property it purchased for a radio station. The court sees no difference between an easement which permits a farmer to drain water from his dominant property onto the servient property and an easement which permits a radio broadcaster to "run" radio transmissions over and out from the servient

property. The fact that the radio station or a transmitter could be located elsewhere does not detract from the intent and use of the easement to benefit the particular parcel in question, Tax Lot 2600. An easement appurtenant is not required to benefit the dominant land but only the possessor of the land in his use of that land.

Weighing all of the above, including the judicial thumb on the scale to account for the "strong presumption" in favor of easements appurtenant, the court finds that the easements in question are easements appurtenant. Accordingly, the restrictions which they place on the use of the subject property must be considered in determining the true cash value of the property under ORS 308.205 and 308.235. It would likewise follow that the value of the easements themselves should be included in and assessed to the value of the dominant estate which appears to be Tax Lot 2600.