CHERRY LAKE, INC., a non-profit cooperative association organized and existing under the laws of the State of Florida, v. JAMES WALTER KEARCE.

26 So. (2nd) 434                                     January Term, 1946
May 28, 1946                                                  Division B
Rehearing denied June 19, 1946

Davis, Davis & McClure, Chas. E. Davis and W. Turner Davis, for appellant.

R. C. Horne and Wm. McChesney, for appellee.

SEBRING, J.:

James Walter Kearce instituted an action at law against Cherry Lake Inc., a non-profit cooperative association organized under the laws of Florida, to recover wages and liquidated damages alleged to be due and owing by defendant by reason of its assumption of liability of the debts and obligations of a predecessor corporation by whom the plaintiff had been employed. The declaration as amended alleged in effect that the defendant, Cherry Lake, Inc., is the successor in interest to and the owner of certain property and assets formerly belonging to Cherry Lake Farms, Inc., a Florida corporation, and that as part of the consideration for the conveyance and transfer to defendant of such assets the defendant assumed and became liable to pay all just debts, demands and obligations of the transferor; that on October 24, 1938, and for a long time prior thereto, plaintiff had been employed by Cherry Lake Farms, Inc., in and around certain buildings on the property of the employer which were used for manufacturing various articles destined for, and placed in the flow of, interstate commerce; that it was the plaintiff's duty to operate the private telephone switchboard kept and maintained by Cherry Lake Farms, Inc., and to place, handle and receive telephone messages in furtherance of the interstate business of the employer; that for said employment the Cherry Lake Farms, Inc., paid the plaintiff the sum of $10.36 weekly for a work week of 66 hours, and said rate of pay was continued from October 24, 1938 to and including January 15, 1943; that there is due to plaintiff from Cherry Lake Farms, Inc., certain specified amounts for wages and overtime, being the difference between the amounts paid by the employer and the minimum wages required to be paid under the Federal

Fair Labor Standards Act of 1938, together with liquidated damages and an attorney's fee. See Title Labor—29 U.S.C.A. Secs. 206, 207, 216.

Pleas were filed to the declaration and upon the issues made trial was had resulting in a verdict and judgment for the plaintiff. The defendant has appealed from the judgment.

One of the questions presented upon appeal is whether plaintiff may maintain an assumpsit action against the defendant upon the debt assumption agreement executed by the defendant with its predecessor, it appearing that the written instrument by which the defendant agreed to become liable for the discharge of the debts, demands and obligations of its predecessor was an instrument under seal. It is our conclusion that the plaintiff has chosen the proper remedy. The rule in this jurisdiction is that where it is manifest from the nature or terms of a contract that the parties intended that the contract should operate for the benefit of a third person such third-party beneficiary may maintain an action thereon in assumpsit, even though the contract be under seal. See American Surety Company of New York v. Smith, 100 Fla. 1012, 130 So. 440; Bruce Construction Corporation v. Federal Realty Corporation, 104 Fla. 93, 139 So. 209; Marianna Lime Products Co. v. McKay, 109 Fla. 275, 147 So. 265.

Another question raised on the appeal is whether the character of the work which was being done by the plaintiff, Kearce, for his employer was such as to bring him within the protection of the Fair Labor Standards Act. The Fair Labor Standards Act requires every employer, without regard to the nature of his business, to pay to each of his employees who is engaged in interstate commerce or in the production of goods for inter-state commerce a certain specified minimum hourly wage. See 29 U.S.C.A. Sec. 206; Fleming v. Kirschbaum Co., 124 F. (2nd) 567, aff. 38 F. Supp. 204. The act also fixes the maximum number of hours per week for which such employees may be lawfully employed at such minimum wage. See 29 U.S.C. A. Sec. 207. Section 16(b) of the Act provides a penalty for violation of such wage and hour law, and authorizes recovery in any court of competent jurisdiction for the penalties imposed, together with a reasonable attorney's fee.

See 29 U.S.C.A. Sec. 216. By section 13(a) (11) of the Act it is provided that the minimum wage and maximum hour provisions, and the penalties for their violation, shall not apply with respect to "any switchboard operator employed in a public telephone exchange which has less than five hundred stations." Sec 29 U.S.C.A. Sec. 213(a) (11). As a plea to the declaration the defendant set up the defense that the plaintiff, Kearce, was employed by Cherry Lake Farms, Inc., as a switchboard operator in a public, not a private, telephone exchange which had less than five hundred stations and that consequently the provisions of the Fair Labor Standards Act relating to minimum wages and maximum hours were not applicable to his situation. The jury found the issue on the plea against the defendant, and the failure of the trial judge to grant a new trial because of such finding is assigned as error.

As appears from the record, Cherry Lake Farms Inc. was incorporated under the laws of Florida for the purpose of carrying on rural rehabilitation and resettlement program in Madison County, Florida, from the proceeds of grants, loans, and other assistance derived from the United States Government. In pursuance of the plan several thousand acres of land were acquired and the land was laid off into farms and home sites. In order to make the venture self-sustaining so far as possible, a community was established with a cooperative store, poultry farm, sawmill, manufacturing plant, warehouses and certain office buildings. A post office, filling station, power plant, and schools were likewise erected. The corporation then made grants of money and entered into contracts of purchase for the farm and home sites with persons known to the corporation as homeowners and homesteaders. In order to provide some measure of subsistence to the homesteaders a handicraft department was organized to manufacture various articles in the form of novelties and souvenirs to be sold to persons outside the resettlement project for profit. Some of the raw materials from which the souvenirs were made were purchased outside the State of Florida and shipped to the project, and some of the manufactured articles made from the materials were sold and shipped in interstate com-

merce to various dealers in this type of merchandise in states other than the State of Florida.

When the resettlement program was first begun the corporation, in order that its officials might keep in touch with all the various departments, projects and activities of the community, installed a private telephone exchange commonly known as a PBX exchange, in the general office of the corporation, with lines running to telephones installed in the general offices, the various departments, the store and filling station the homes of the officials, and at various other places throughout the project. The exchange also had a connection with the public telephone exchange at Madison, Florida, so that telephonic service could be had with persons outside the project. As the homes and other buildings on the project became completed and as the community became established, some of the phone installations became much less needed than at the outset and several of the original extensions were discontinued. Also, to help lessen the direct expense of operation to the corporation the officials began charging those separate departments, which had funds directly allocated to them, a small monthly rental for the use of the phone service. The corporation also installed several phones not needed in the resettlement operations in the homes of homesteaders and homeowners who lived on the project but who were not officials of the corporation. For such service such persons were charged a small monthly rental. All of the cooperative associations and all of the howeowners and homesteaders who obtained phone installations entered into the general plan of operations and were an integral part of the rehabilitation program of the corporation. Though several persons outside the project area made applications for telephones, none were given phones and the corporation did not consider that it was obligated to such persons or to the public generally to furnish them telephone service. The corporation never applied to or obtained from the Florida Railroad Commission a franchise to operate a public telephone exchange, nor did it file a schedule of rates or make returns or otherwise attempt to conform to the rules and regulations of the Commission.

As operator of this exchange Kearce was required to be on

duty continuously eleven hours each day, to receive all incoming and outgoing calls handled by the system. In case of long distance calls through the Madison exchange no charge was made by the corporation for the connection from Cherry Lake to Madison. Many long distance calls were made or received by the handicraft department to or from points outside the State of Florida with reference to the purchase of raw materials and the sale of souvenirs and novelties.

The burden of proving the plea to the effect that the plaintiff was not entitled to the provisions of the Fair Labor Standards Act because of the fact that the telephone exchange was a public exchange with less than 500 stations was upon the defendant. See Walling v. Fred Wolferman, Inc., 54 Supp. 917; Fletcher v. Grinnell Brothers, 62 F. Supp. 258. We think that upon the facts delineated the jury was lawfully authorized to find that the defendant had not sustained the burden.

An important, if not controlling, element in determining whether a telephone system is a public utility is the factor of serving or willingness to serve the entire public within the area in which the facilities of the organization are located. See 43 Am. Jur. 574, Public Utilities and Services Sec. 6. The essential feature of a public use is that it is not confined to privileged individuals but is open to the indefinite public, the test being whether the general public has a legal right to the use which cannot be gainsaid, or denied or withdrawn at the pleasure of the owner. See 52 Am. Jur. p. 40, Telegraphs and Telephones, Sec. 8; 132 A.L.R. 1498; Thayer v. California Development Bd., 164 Cal. 117, 128 P. 21, 25; Farmers Market Co. v. R. R. Co., 142 Pa. 580, 21 A. 902, 989, 990.

As tested by the rule, the switchboard operated by the corporation had none of the characteristics of a public telephone exchange. The corporation was not organized for the purpose of operating a public telephone exchange. The corporation never applied to the Florida Railroad Commission for a franchise to operate a public exchange, nor did it make any effort to comply with the rules and regulations of the commission established for the governance of such public utilities. The system was never intended for, or open to the use of, all the members of the public who might desire the service to the

extent of its capacity, but the corporation controlled the use to which the facilities were put. Throughout the course of its operations the exchange was maintained primarily for the convenience of the corporation in furthering the aims of the resettlement and rehabilitation project; and although a few subscribers not officers or employees of the corporation were allowed to participate in the service, such service was merely incidental and in nowise changed the dominant purpose for which the system was installed. See Cawker v. Meyer, 147 Wis. 320, 133 N. W. 157, 37 L.R.A.N.S. 510; State ex rel. M. O. Danciger & Co. v. Public Service Comm., 275 Mo. 483, 205 S.W. 36; Ford Hydro-Electric Co. v. Town of Aurora, 206 Wis. 489, 240 N.W. 418; Public Service Co. v. City of New-castle, 212 Ind. 229, 8 N.E. (2nd) 821.

This being our conclusion upon the effect of the evidence, we think that the plaintiff has proven a case entitling him to a recovery under the Fair Labor Standards Act. It is plain from the testimony that the employer, in the manufacture and sale of the products of the handicraft industry, was engaged in interstate commerce and in the production of goods for interstate commerce, and that the telephone switchboard was a necessary and integral part of such venture and served certain outlets which bore a substantial connection with such commercial activity. The exchange was not a public exchange. From the nature of the work he was performing and the fact that he was required to be on duty continuously for a period of eleven hours each day and subject to call at all times, we think that the plaintiff was well within the meaning of section 7 of the Fair Labor Standards Act which requires that an employee be "actually in or so closely related to the movement of the commerce as to be a part of it." See McLeod v. Threlkeld, 319 U.S. 419. The judgment should therefore be affirmed.

All other questions raised by the appellant on this appeal have been duly considered. In our view they do not affect the judgment appealed from.

Judgment affirmed.

CHAPMAN, C. J., BROWN and THOMAS, JJ., concur.