Argued March 6, affirmed April 4, 1972

## HOUGHTON ET AL, *Appellants, v.* DEPARTMENT OF REVENUE, *Respondent.*

495 P2d 715

*Paul D. Clayton,* Eugene, argued the cause for ap-

pellants. With him on the briefs were Luvaas, Cobb, Richards & Fraser and Donald D. Diment, Jr., Eugene.

*Ted E. Barbera,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was Lee Johnson, Attorney General, Salem.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN, TONGUE and BRYSON, Justices.

TONGUE, J.

This is an appeal from a decision by the Oregon Tax Court affirming an order by defendant which approved the valuation for tax purposes of plaintiffs' real property by the Lane County assessor.[1] The real property involved is located on the Pacific Ocean in Lane County and is owned and operated by plaintiffs as partners under the assumed business name of Sea Lion Caves.

The facts of the case, as well as the basic legal issues and contentions of the parties, are set forth in a well written decision by the Oregon Tax Court, 4 OTR 451 (1971), and need not be repeated for the purposes of this opinion.

As stated in that decision, the parties accepted the assessor's valuations for the timber and improvements,[2] leaving only the value of the land in dispute. The parties have agreed that in arriving at the true cash value of the land neither the market value method nor the cost method of appraisal is appropriate because of the unique nature of the property, leaving

---

[1] The order of the Department of Revenue, No. VL 69-512, was affirmed except for the classification of the elevator shaft on the property as an "improvement," holding that it must be "added to the 'land' and removed from 'improvements.'"

[2] Exclusive of the elevator shaft, as stated in note 1.

only the income method, to be applied by use of the so-called "land residual" technique. For that purpose the parties have also agreed upon 15% as a capitalization rate or rate of return on investment.[9]

Two issues remain in disagreement:

1. Whether the Oregon Tax Court erred in considering the income as shown by the Oregon State Income Tax return for the fiscal year ending October 31, 1968, as well as the income as shown by returns for the fiscal years 1963 to 1967, inclusive, in determining the projected gross income for the property as of the assessment date of January 1, 1968.

2. Whether the Oregon Tax Court erred in "not utilizing a coordination fee or its equivalent in arriving at a net income ascribable to the subject property in determination of an appropriate economic rent."[4]

1. *The Oregon Tax Court did not err in its consideration of income for the fiscal year 1967-68.*

The State's appraiser testified that, in his opinion, the "stabilized" gross income for the property was $369,500. In support of that opinion the State offered a schedule prepared by that witness showing the annual income from the property based upon Oregon State Income Tax returns for the fiscal years 1963-64, 1964-65, 1965-66, 1966-67 and also for the fiscal year 1967-68. As previously noted, the fiscal year 1967-68 for the purposes of that tax return ended on

[9] For an explanation of the method used in determining the value of property by the application of such a capitalization rate to the income from such property, see the decision of the Oregon Tax Court, 4 OTR 451 at 455 (1971).

[4] As stated in plaintiffs' second assignment of error.

October 31, 1968, ten months after the assessment date of January 1, 1968.[e]

When that schedule was offered in evidence plaintiffs objected on that ground, although frankly conceding that "it may be that they should be in to show the trend is toward an increase." The trial judge then stated that "your objection will be noted and taken into consideration in considering the evidence," but admitted the schedule "into evidence."[f]

The State's witness, on cross-examination, stated that in arriving at the "stabilized" gross income of $369,500, he "gave no weight" to the 1967-68 tax return (showing a gross income of $367,651), but that his projection of income was "based strictly" on the gross income as shown in the tax returns for the immediately previous years (ranging from $258,028 for the year 1963-64 to $312,917 for the year 1966-67). He also testified that the 1967-68 income (of $367,541) "verified" this upward trend in gross income for the property. He admitted, however, that he did not then know that the admission charges to the public had been increased substantially in the Spring of 1968.

Based upon this testimony it is contended by the State that the only use of the 1967-68 income was to verify an upward trend in income, which had already been established by income figures for the im-

---

[e] ORS 308.205 defines the cash value of real property as "* * * market value as of the assessment date."

ORS 308.210 establishes January 1 of the year of assessment as the assessment date for real property.

[f] It should also be noted that plaintiffs do not assign as error the admission into evidence of the income schedule. Instead, plaintiffs' assignment of error is that "the court erred in accepting the figure utilized by the defendant as the appropriate, projected gross income for the subject property."

mediately previous years, and that the use of that evidence for such a purpose was fully as proper as the use of evidence of comparable sales occurring after the date of valuation, as approved in *H/K Company v. Board of Equalization,* 175 Neb 268, 121 NW2d 382, 387 (1963), and in *Housing Authority of the City of Dallas v. Hubbard,* 274 SW2d 165, 167 (Tex Civ App 1954).

The Oregon Tax Court, in considering this issue, expressly noted in its decision that the increase in income for 1967-68 was attributable in part to an increase in admission fees charged and stated that "it is difficult for the court to see how Mr. McHale (the State's witness) would have trended to a figure as high as $369,500 without utilizing the income of 1967-68." Thus, although holding that the State's schedule of income was still entitled to "greater weight" than the "income analysis" of plaintiffs' expert (which was prepared on a somewhat different basis), the court recognized that the schedule was "subject to criticism for the trending of gross income mentioned above."[7]

■ The ultimate result of the decision by the Tax Court, was to approve the valuation by the Lane County assessor in the sum of $625,000 for the land.[8] That approved valuation is considerably lower than the valuation of the land in the sum of $867,450, as testified by the State's expert witness in this case, based in part upon possible consideration of income

---

[7] The opinion of the Oregon Tax Court does not mention the possible analogy of evidence of comparable sales occurring after the appraisal date, perhaps because that contention may not have been made by the State to the Tax Court. Because of the basis on which this case is decided, we also find it unnecessary to decide that question.

[8] Not including the elevator shaft. See note 1.

for the fiscal year 1967-68. Accordingly, we cannot properly find that the Oregon Tax Court gave improper consideration to the income for that fiscal year, as included in the income schedule offered by the State and as referred to in the testimony of the State's expert witness in support of that schedule. Neither can we properly find, in any event, that under these facts the plaintiffs were prejudiced in any way by any such possible error.

2. *The plaintiffs failed to prove that in computing the income from the property for purposes of capitalization they were entitled to deduct a "coordination" allowance of 20% of the net operating income from the property.*

Plaintiffs contend that "the income approach to valuation generally attempts to determine what an investor would pay for the right to receive the income from the subject property"; that this "requires a determination of economic rent to be capitalized, whether owner occupied or not"; that "before determining what a lessee would pay to rent the property some profit must be allowed to the lessee"; that the allowance of such a "profit factor" may be called a "coordination fee, or its equivalent," which should be deducted before capitalization of the remaining net income in order to determine the "residual income attributable solely to the land." Plaintiffs also say that such a "coordination fee should not be confused with the management fee which was deducted by both appraisers" as a "cost of operating the business."

Based upon these contentions, plaintiffs say that the valuation arrived at by the State's expert witness must be rejected because of his failure to make any

allowance for such a "coordination fee" or its equivalent. For the same reasons, plaintiffs contend that the Tax Court "erred in not utilizing a coordination fee or its equivalent."

It is significant to note, however, that although plaintiffs' expert witness, in his attempts to justify an allowance or deduction of 20% of the net operating income as a "coordination fee," in the sum of $35,305, gave no explanation of how he arrived at that percentage or amount. On the contrary, he testified only that an investor in such property would be "entitled to *some* profit on the basis of [his] coordination of the property itself, the management and the rest of it."⑨

By contrast, this same witness, by his testimony, provided a basis for his opinion that a "management fee" of 20%, or $40,000, should be allowed, in that such an allowance would provide reasonable compensation to each of three partners for the full time devoted by each of them to the management and operation of the business, or $13,333.33 per year for each partner. Plaintiffs' witness made no attempt, however, to estimate either the amount of time required for the work involved in such "coordination" efforts or the amount allowed for such services in determining the value of other properties, either in terms of percentage or dollar amount.

■ It follows, based upon the record in this case,

---

⑨ To the same effect, the witness testified that such an investor "has to make *some* return on going in, acquiring the premises, hiring the management and doing all the rest of it."

Also, as previously stated, plaintiffs' briefs on appeal contend that "before determining what a lessee would pay to rent the property, *some* profit must be allowed to the lessee." Plaintiffs' briefs do not, however, explain how the proper percentage or amount to be deducted for that purpose was, or should be, determined.

that there is no factual basis to support the bare conclusion expressed by plaintiffs' expert witness that in computing the net income to be capitalized for the purpose of determining the fair value of the land involved in this case a deduction of 20%, or $35,305, should be allowed as a "coordination fee," rather than an allowance of 6%, or $10,582, as an example. It also follows that neither the Oregon Tax Court, as the trier of the facts, nor this court, in its *de novo* consideration of the record on this appeal, is bound by such an expression of opinion. *City of Portland v. Ruggero,* 231 Or 624, 630, 373 P2d 970 (1962), and cases cited therein. See also *Devine v. Southern Pacific Co.,* 207 Or 261, 273, 295 P2d 201 (1956), and *Henderson v. U.P.R.R. Co.,* 189 Or 145, 167, 219 P2d 170 (1950).

It should also be noted again that the result of the decision by the Tax Court was to approve the Lane County assessor's valuation of $625,000 for the land, as compared with a valuation by plaintiffs' expert witness of $418,000 (after deduction of 20% of the gross income as a "coordination fee") and as also compared with a valuation by the State's expert witness of $867,000 (with no direct deduction of a "coordination fee" as such, but based on testimony that the same factors were considered by him in determining an appropriate "management fee" and capitalization rate). In addition, it should be noted that in arriving at its decision the Tax Court expressly approved the deduction of $40,000 for management, as proposed by plaintiffs' expert witness.

For all of these reasons we agree that the Tax Court did not err in approving the valuation of this land by the Lane County Assessor and that under the record in this case its decision must be affirmed.

Because of this basis for our decision it is not necessary to decide plaintiffs' contention that the Tax Court erred in completely "reject(ing) the coordination fee concept," based upon its agreement with the contention by the State that plaintiffs had not cited any appraisal treatises as authority in support of such an allowance and that the same factors are considered in determining the proper capitalization or interest rate to be applied in such a case.[10]

Affirmed.

---

[10] In support of that contention the State cites American Institute of Real Estate Appraisers, "The Appraisal of Real Estate," 268, 269 (5th ed), and Mid-Island Shopping Plaza, Inc. v. Podeyn, 25 Misc 2d 972, 204 NYS2d 11, 28 (Sup Ct 1960), *aff'd* 14 App Div 2d 571, 218 NYS2d 249 (1961), *aff'd* 10 NY2d 966, 180 NE2d 63, 224 NYS2d 283 (1961), among other authorities.

In addition, the State's expert witness testified that he considered the factor of investment management, both in arriving at a capitalization rate of 15% and also in the allowance of a separate fee for management of the property.

Plaintiffs contend, on the contrary, that some of these same authorities make it clear that the factors involved in the allowance of a "coordination fee" are different from those involved either in the determination of a proper capitalization rate or in a determination of the separate allowance of a "management fee," for which plaintiffs' expert witness made a separate allowance of $40,000, as previously stated.

Plaintiffs also contend that the Oregon Tax Court erred in its reliance upon our decision in Swan Lake Mldg. Co. v. Dept. of Rev., 257 Or 622, 478 P2d 393 (1970), for the proposition that "all the value, including the potential lessee's value, is included in the assessment." Again, because of the basis for our decision in this case it is not necessary to decide that question.