# IN THE OREGON TAX COURT

## Charles J. and Charlotte MATHIAS
*v.*
## DEPARTMENT OF REVENUE
(TC 2910)

Plaintiff Charles J. Mathias appeared *pro se.*

Ted E. Barbera, Senior Assistant Attorney General, Department of Justice, Salem, represented defendant.

Plaintiffs' Motion For Summary Judgment granted April 10, 1990.

### CARL N. BYERS, Judge.

Plaintiffs own a lot in a subdivision in West Salem. Comparable lots in the same subdivision are assessed at values lower than plaintiffs' because of their ownership. Defendant has approved this unequal treatment because the 1989 legislature enacted ORS 308.205(3). That statute provides:

> "If the property consists of four or more lots within one subdivision, and the lots are held under one ownership, the lots shall be valued under a method which recognizes the time period over which those lots must be sold in order to realize current market prices for those lots." Or Laws 1989, ch 796, § 30.

Plaintiffs contend that this law is unconstitutional. Inasmuch as there is no dispute as to the facts, the parties have filed cross-motions for summary judgment.[1]

*BACKGROUND*

■ The "dominant note" of Oregon's property tax system is that property is to be valued at its market value. *Portland Canning Co. v. Tax Com.*, 241 Or 109, 404 P2d 236 (1965). Before 1987, defendant mistakenly advised the county assessors to apply a "developer's discount" to lots which *collectively* would take more than one year to sell. This resulted in developer-owned lots being assessed at less than true cash value while individually owned lots were assessed at full true cash value.

■ In *First Interstate Bank v. Dept. of Rev.*, 10 OTR 452 (1987), *aff'd* 306 Or 450, 760 P2d 880 (1988), this court condemned that practice because it values the owner's interest in the property. Property tax is imposed on the value of the property, not the value of the owner's interest. *Sproul et al v. Gilbert et al*, 226 Or 392, 421, 359 P2d 543 (1961). This court found there is no basis for valuing a $14,000 lot at $9,000 simply because the owner owns many such lots. If such a valuation principle were accepted, the largest timber owners,

---

[1] Or Laws 1989, ch 796, § 32 provides:

"The Department of Revenue and the Oregon Tax Court shall apply the amendments to ORS 308.205 by section 30 of this Act in any appeal pending on March 31, 1989."

Plaintiffs' appeal, commenced in 1988, was pending before the Department of Revenue on March 31, 1989.

landlords and industries could likewise lay claim to a discount. The court also found that the developer's discount method violated Oregon's constitutional requirement of uniformity of taxation.[2]

After the Supreme Court's decision, a bill was introduced in the 1989 legislature to make the method law. With only minor changes, and with the support of the Department of Revenue, the provision was enacted as Or Laws 1989, ch 796, § 30.

## LAW PRESUMED CONSTITUTIONAL

■ Once again this court must consider the validity of the "developer's discount" method. However, in this instance it is "presumed to be constitutional and every intendment must be indulged by the court in favor of its validity." *Tompkins v. District Boundary Board,* 180 Or 339, 350, 177 P2d 416 (1947). Further, if plaintiffs are to prevail they must show that the statute is unconstitutional "beyond a reasonable doubt."

"It is also a canon of statutory construction that if a legislative enactment can be given any reasonable construction consistent with its validity, such interpretation should be adopted." *Wright v. Blue Mt. Hospital Dist.,* 214 Or 141, 144, 328 P2d 314 (1958).

Finally:

"After the process of construction has been accomplished, the decisions still admonish that we should indulge every presumption in favor of validity and declare no act of the legislature void unless invalidity be shown beyond a reasonable doubt." *State v. Anthony,* 179 Or 282, 301, 169 P2d 587 (1946).

*See also City of Portland v. Goodwin,* 187 Or 409, 416, 210 P2d 577 (1949).

■ Two provisions of Oregon's Constitution directly bear on the issue. The relevant portion of Article I, section 32, requires that:

"[A]ll taxation shall be uniform on the same class of subjects within the territorial limits of the authority levying the tax."

---

[2] The constitutional issue was not reached by the Supreme Court in affirming this court's decision.

In a similar vein, Article IX, section 1, provides:

"The Legislative Assembly shall, and the people through the initiative may, provide by law uniform rules of assessment and taxation. All taxes shall be levied and collected under general laws operating uniformly throughout the State."

In commenting upon the effect of these two provisions, the Oregon Supreme Court has stated:

"These provisions were intended to permit the reasonable classification of subjects of taxation * * *. The legislature has wide discretion in classifying subjects of taxation." *Knight v. Dept. of Revenue*, 293 Or 267, 271, 646 P2d 1343 (1982).

## CONSTRUING THE STATUTE

■ The apparent purpose of the statute is to benefit those taxpayers who own more than four lots in one subdivision by treating the lots as a collective whole. By assuming that sale of the lots will take place over time, the greater the number of lots held under one ownership, the greater the discount. While this may seem patently unfair to taxpayers who own fewer than four lots, the classification must be sustained if there is any rational basis for it.

"What is required in assessing a constitutional challenge to classification for tax benefit is a review of the grounds for the classification to determine if it rests upon a rational basis. The legislature may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it. *Carmichael v. Southern Coal Co.*, 301 US 495, 57 S Ct 868, 81 L Ed 1245, 109 ALR 1327 (1937); *Smith et al v. Columbia County et al*, 216 Or 662, 341 P2d 540 (1959). It, however, is not sufficient to merely point out differences between the groups of taxpayers for divergent treatment. The differences justifying the attempted classification must bear a reasonable relationship to the legislative purpose. The legislative power to create a classification implies the authority to subclassify persons included in the general class if there is a rational basis for making this further distinction. *Smith et al v. Columbia County et al, supra; State v. Kozer*, 116 Or 581, 242 P 621 (1926)." *Huckaba v. Johnson*, 281 Or 23, 26, 573 P2d 305 (1978).

In examining the statute, it is difficult to find any rational basis for the distinctions. The "lots" involved are not

limited to newly developed or even vacant lots. They are also not restricted in use or size. A national corporation could own ten lots of one acre each in an industrial subdivision improved with a large manufacturing plant. The corporation would be entitled to a reduced value for those lots. Despite the apparent purpose of the law, ownership is not limited to developers, financial institutions or any other particular type of owner.

By discounting the value of the lots over time, the statute assumes that the lots are for sale. Strangely, it does not require the lots to be held for sale. Also, "current market prices" can only mean the current market value or true cash value. Thus, the statute implicitly acknowledges that current true cash value is greater than the value of the owner's collective interest in those lots. In essence, the statute is directing valuation based on ownership interests rather than the property's actual value. This presents significant uniformity problems. Two examples will illustrate those problems.

*Example 1*

Assume a subdivision of 300 lots, all of which are very similar and have the same "current market price." A taxpayer who owns 150 lots in the subdivision will be assessed less value per lot than a taxpayer owning 15 lots. Likewise, a taxpayer owning 15 lots will be assessed at a lesser value per lot than a taxpayer owning five lots. Only those taxpayers owning less than four lots will receive no reduction from true cash value.

*Example 2*

A taxpayer might be a landlord who owns 20 rental houses in the same subdivision. The 20 lots would be reduced in value as if they were for sale even though they are not. Another landlord may own 20 similar rental houses located in several subdivisions. That landlord will receive no reduced land value even though all 20 properties are for sale.[3]

## NO RATIONAL BASIS

This court cannot find any rational basis for the distinctions made. Defendant contends that the statute was

---

[3] The absorption period for a collection of properties is not solely a function of their location. The fact that the method favors multiple ownership in the same subdivision does not directly correlate with the time it might take to market a number of lots owned by one taxpayer.

perhaps enacted to encourage subdivision development. However, the statute is not limited to developers nor to property being developed. The statute does not encourage development. It only encourages multiple lot ownership in the same subdivision.

The court finds that the statute directly violates the basic protection afforded by Article I, section 32, of the Oregon Constitution. Property of the same class, *i.e.,* lots in subdivisions, are not subject to uniform taxation. Owners of lots of equal true cash value would not pay taxes on equal values. This is not because the properties are different or are used differently but simply because the owners are different. It is difficult for this court to imagine a more discriminatory scheme.

"It is difficult to conceive of a justifiable exemption law which should select single individuals or corporations, or single articles of property, and, taking them out of the class to which they belong, make them the subject of capricious legislative favor." 1 Cooley, *Taxation* 381-82 (3rd ed 1903).

The statute directs disparate taxation of properties which are not different. Their physical characteristics and uses may be virtually identical. In fact, even the owners may be identical. A taxpayer may own four lots in one subdivision, the values of which are reduced, and three lots in another subdivision, the values of which are not reduced. The statute fails to describe the class for special treatment by any characteristics having a rational basis for the difference. There can be little doubt that if the statute attempted to impose a *higher* value for taxation, the classification would be declared unconstitutional.

## *BASIC PRINCIPLES OF AD VALOREM TAXATION*

It is difficult for this court to understand how the department could encourage the legislature to enact such a provision. Surely the department, with its expertise in ad valorem taxation, should understand that such a method runs contrary to the basic principles of property taxation.

"It is a well-accepted rule of valuation that the individual personalities and opportunities of particular owners must be ignored. 4 *Nichols on Eminent Domain* ch 12; *State Highway Com. v. Arnold et al,* 218 Or 43, 341 P2d 1089, 343 P2d 1113 (1959)." *Joseph Hydro Associates, Ltd. v. Dept. of Rev.,* 10

OTR 277, 283 (1986) (owner's income tax consequences on hypothetical sale of property ignored).

■     The number of ownership interests and how they are arranged are ignored in our property tax system.

"In fixing the true cash value of land for property tax purposes the effect of existing leases on the value to the owner is disregarded. The basis for such a principle is that the tax is levied upon the land and is a tax upon all the interests into which the land might be divided." *Swan Lake Mldg. Co. v. Dept. of Rev.,* 257 Or 622, 625, 478 P2d 393, 480 P2d 713 (1971).

Only where partial interests become part of the public domain by easement, restrictions or other conveyance are such interests recognized. *See,* for example, *Willamette Factors v. Dept. of Rev.,* 8 OTR 400 (1980); *Rockwood Development Corp. v. Dept. of Rev.,* 10 OTR 95 (1985); *Tualatin Development v. Dept. of Rev.,* 256 Or 323, 473 P2d 660 (1970), and *Marchel v. Dept. of Rev.,* 9 OTR 317 (1983).

.     The statute tries to account for the time the property may have to be on the market before it sells. However, defendant's own administrative rule defining "Market Value" recognizes that every property requires some time to be exposed on the market.

"Market Value as a basis for true cash value shall be taken to mean the most probable price in terms of money which a property will bring *if exposed for sale in the open market, allowing a period of time* and financing *typical for the particular type of property* involved and under conditions where both parties to the transaction are under no undue compulsion to sell or buy and are able, willing and reasonably well-informed." OAR 150-308.205(A)(1)(a). (Emphasis added.)

As pointed out above, the legislature has wide discretion in making classifications. It may tax property unequally just as it may exempt some property entirely. In doing so, however, there must be some rational basis for the classifications it makes.

"This does not mean that the subjects of the class selected for taxation shall be precisely alike in all respects, but rather that they must be alike in the essential particulars which induced the legislature to include them in one classification. All within the class must be susceptible of like treatment and all the constituents of the class must be affected alike under

like circumstances." *Standard Lbr. Co. v. Pierce et al.,* 112 Or 314, 336, 228 P 812 (1924).

## CONCLUSION

In this case, the legislature has selected for classification taxpayers owning more than four lots in one subdivision. The court is unable to discern any essential similarities in the subjects of the classification made. It discriminates against those owning fewer than four lots in one subdivision by reducing the tax burden of those who own more than four lots. If the uniformity provisions mean anything, they must prohibit this type of discrimination. Now, therefore,

IT IS ORDERED that defendant's Motion For Summary Judgment be, and hereby is, denied; and

IT IS FURTHER ORDERED that plaintiffs' Motion For Summary Judgment be, and hereby is, granted.

Plaintiffs to recover their costs and disbursements.