# IN THE OREGON TAX COURT

## BOISE CASCADE CORPORATION
*v.*
## DEPARTMENT OF REVENUE
(TC 3018)

Richard A. Hayden, Bogle & Gates, Portland, represented plaintiff.

Joseph Laronge, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Preliminary ruling rendered June 17, 1991.

## CARL N. BYERS, Judge.

This case concerns the true cash value of a green veneer mill in Independence, Oregon, for the tax year 1988-89. Plaintiff appeals from a value of $3,430,000 and contends the true cash value of the property, as of the date in question, was no more than $1,471,000. The parties disagree on valuation concepts and request a preliminary ruling to assist them in preparing for trial.

The issue presented is whether the "intangibles," goodwill, going concern, management, and work force in place, are includable in the assessed value of real property for property tax purposes. This inquiry, and the court's response, is limited to plaintiff's industrial plant involved in this action.

In making this ruling, the court will distinguish what is being taxed from the measures used to assess what is being taxed. Likewise, it will distinguish the measures from the methods of measurement.

## PROPERTY SUBJECT TO TAXATION

ORS 307.030 defines what is subject to taxation:

"All real property within this state and all tangible personal property situated within this state, except as otherwise provided by law, shall be subject to assessment and taxation in equal and ratable proportion."

This statute is clarified by the statutory definitions of "real property," "tangible personal property," and, for contrast, the definition of "intangible personal property."

" 'Real property' includes the land itself, above or under water; all buildings, structures, improvements, machinery, equipment or fixtures erected upon, above or affixed to the same; all mines, minerals, quarries and trees in, under or upon the land; all water rights and water powers and all other rights and privileges in any wise appertaining to the land; and any estate, right, title or interest whatever in the land or real property, less than the fee simple." ORS 307.010(1).

" 'Tangible personal property' means and includes all chattels and movables, such as boats and vessels, merchandise and stock in trade, furniture and personal effects, goods, livestock, vehicles, farming implements, movable machinery, movable tools and movable equipment." ORS 307.020(3).

" 'Intangible personal property' or 'intangibles' means and includes money at interest, bonds, notes, claims, demands and all other evidences of indebtedness, secured or unsecured, including notes, bonds or certificates secured by mortgages; all shares of stock in corporations, joint stock companies or associations; media constituting business records, computer software, files, records of accounts, title records, surveys, designs, credit references, and data contained therein. 'Media' includes, but is not limited to, paper, film, punch cards, magnetic tape and disk storage." ORS 307.020(1).

■    It should be clear from these statutes that the named items in dispute are not intangible personal property. Likewise, the court does not believe they are some form of intangible real property. They are not "rights and privileges" appertaining to the real property. They are not what is being taxed.

To tax property, the state must "measure" or assess the value of that property. Industrial property, such as the subject, is assessed at its true cash value. This is defined in ORS 308.205:

"True cash value of all property, real and personal, means the market value of the property as of the assessment date. True cash value in all cases shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue and in accordance with the following: * * *."

The department has adopted an administrative rule defining market value:[1]

"(a)    Market Value as a basis for true cash value shall be taken to mean the most probable price in terms of money which a property will bring if exposed for sale in the open market, allowing a period of time in financing typical for the particular type of property involved and under conditions where both parties to the transaction are under no undue compulsion to sell or buy and are able, willing and reasonably well-informed." OAR 150-308.205-(A)(1).

---

[1] The appraisal profession has accepted several definitions of the concept of market value. *See* American Institute of Real Estate Appraisers, *The Appraisal of Real Estate* 17 (9th ed 1987).

■      The concept of market value, or value in exchange, is a synthesis of conflicting economic theories. American Institute of Real Estate Appraisers, *The Appraisal of Real Estate* 24-38 (9th ed 1987). To utilize that concept, the appraiser attempts to replicate the positions of a hypothetical buyer and a hypothetical seller. To do this, the appraiser must ignore the specific circumstances or peculiarities associated with specific owners of property. *Joseph Hydro Associates, Ltd. v. Dept. of Rev.*, 10 OTR 277 (1986).

If appraising, as an art, can be likened to painting, market value is a medium of watercolors, not painting by numbers. In applying the concept of market value, the appraiser must intentionally blur some lines and soften the edges of others. The appraiser seeks a visual representation of an ideal, not some specific reality. This point is essential in property taxation.

■      In property taxation, uniformity is a significant and necessary consideration. Identical properties are to be assessed at identical values. Facts or circumstances not directly connected with the property, such as who owns the property, should not affect its assessed value. This court has held that an appraisal rule attempting to value property on the basis of who owns it is unconstitutional. *See First Interstate Bank v. Dept. of Rev.*, 10 OTR 452 (1987), *aff'd* 306 Or 450, 760 P2d 880 (1988). *See also Mathias v. Dept. of Rev.*, 11 OTR 347 (1990), *aff'd* 312 Or 50, 817 P2d 272 (1991), where the court held ORS 308.205(3) likewise unconstitutional.

In theory, the market value of all property is influenced by events worldwide.[2] The price of tea in China may have something to do with the price of everything else. In a realistic sense, it is impossible for an appraiser to investigate and estimate the influence on value of all the world's events. In practice, appraisers try to replicate the market's position. That is, both seller and buyer make reasonable investigations as to specific uses and conditions of the property, but rest most of the totality of value influences on broad economic assumptions.

---

[2] Value may be a good subject for the new theory or science of chaos. Glerick, *Chaos, Making A New Science* (1987).

The traditional three methods of measuring market value are: The market comparison approach, the cost approach and the income capitalization approach. In the interest of brevity, the court will not repeat that which is found in standard appraisal texts. *See*, for example, American Institute of Real Estate Appraisers, *The Appraisal of Real Estate* 70-71 (9th ed 1987). It should be sufficient to note that the three approaches measure value from different perspectives. In a perfect world, all three approaches would come to the same result. Because it is an imperfect world, it is not always possible to use all three approaches in appraising property. With this general background, it is appropriate to turn to the specific items of interest to the parties.

## GOODWILL

The term "goodwill" is not commonly used in appraising real property. In using the term, the court assumes the parties intend the following meaning:

> "A salable business asset based on reputation, not physical assets." American Institute of Real Estate Appraisers, *The Dictionary of Real Estate Appraisal* 141 (1984).

■ Although the term "goodwill" is listed by the parties and mentioned in their briefs, they do not specifically address the concept. Perhaps they do so intentionally, for goodwill is not taxable property. If goodwill exists in connection with tangible, real or personal property, it arises not from the property but from the business operation of the property. Even where goodwill is associated with property such as hotels, the concept inherently is associated with the business operation. Consequently, goodwill is an intangible asset that is not subject to taxation. *Buck v. Mueller*, 221 Or 271, 285, 351 P2d 61 (1960).

## GOING CONCERN

Going-concern value, as traditionally defined, is a different value from market value. Consider the following definition and explanation:

> "*Going-concern value is the value created by a proven property operation; it is considered a separate entity to be valued with an established business*. This value is distinct from the value of the real estate only. Going-concern value

includes an intangible enhancement of the value of an operating business enterprise which is associated with the process of assembling the land, building, labor, equipment, and marketing operation. This process leads to an economically viable business that is expected to continue.

"Going-concern appraisals are commonly conducted for hotels and motels, restaurants, bowling alleys, industrial enterprises, retail stores, and similar properties. *In appraising these properties, the physical real estate assets are integral parts of an ongoing business, so market values for the land and the building are difficult, if not impossible, to segregate from the total value of the business.*" American Institute of Real Estate Appraisers, *The Appraisal of Real Estate* 22 (9th ed 1987) (emphasis added).

■     The statutes subjecting plaintiff's property to taxation do not tax going-concern value. They tax true cash or market value. However, defendant appears to use the term "going-concern value" in a more restricted sense than indicated by the description above. Defendant's version focuses on the benefits of a proven property assemblage, without considering all of the other factors of the broader definition. In this connection, defendant relies on OAR 150-308.205-(D)(1)(c) which states:

"When the unit of property is an operating plant or an operating integrated complex, it shall be considered to be a 'going concern.' The going concern concept recognizes that the value of an assembled and operating group of assets usually exceeds the value of an identical group of assets that are separate or sitting idle."

The court interprets this rule to include two elements of value: (1) Value created by assembling separate parts into an integrated whole. The process of assembly includes engineering or design, manual labor to install the parts and their connecting ties, and materials such as concrete, pipes and wiring used to create the integrated whole. (This list is illustrative, not exhaustive.) (2) Value created by the demonstrated ability of the property to perform as an integrated unit. This is a risk-averted value. It exists only if the capacities and functions of the parts are so aligned and arranged as to perform to a demonstrable level. This value may also reflect the "start up" expenses incurred in bringing

the assemblage to the point where it operates as an integrated unit.

This narrow definition of going-concern value as found in defendant's rule is to be distinguished from going-concern value in the broader sense. The broad sense includes value attributable to product quality, marketing and other attributes associated with the business operation. To avoid confusion, the court prefers to label the more restricted meaning as "assemblage value." Assemblage value is part of the market value of taxable property. Going-concern value in the broad sense is not part of the market value of property. Rather, it is the value of a business which includes property.

■ By analogy, test driving a yellow car will influence the buyer's *market value* estimate when he hears the engine purr and feels the brakes work. This is "assemblage value" or defendant's limited "going-concern value." Going-concern value in the broad sense is the value the buyer would consider the yellow car to have because it is a taxi. Although going-concern value in the broader sense is used in taxing the property of utilities, *see* ORS 308.515, it is not used in Oregon's general property tax statutes. If defendant's rule purports to tax going-concern value in the broad sense, to that extent it is void.

It is fortunate indeed that assemblage value is taxable since, in the court's view, it appears impossible to separate it out of market value. Assemblage value represents some diminution of risk. To properly measure it one must know what risks are reduced or eliminated. This would require the appraiser to measure unknowns. It is common knowledge that industrial plants, machines and other creations may be of the best design and yet experience many unanticipated problems. Consequently, it is questionable whether any method can adequately measure those risks.

## MANAGEMENT AND WORK FORCE IN PLACE

The concepts of management and work force in place are of the same nature and may be treated as one. Defendant contends these elements of value are simply a "local advantage" which should not be deducted from the market value of property. While plaintiff's primary argument is against the use of the income approach generally, plaintiff specifically

addresses the question of management and work force. Plaintiff contends these factors are not inherent to property and, therefore, not includable in the property's assessed value.

■　　　The court believes it is inaccurate to label management and work force in place as "intangibles." That term suggests a right or value independent in its own sphere. Management and work force in place are external influences or forces which affect the value of property. American Institute of Real Estate Appraisers, *The Appraisal of Real Estate* 39-41 (9th ed 1987). As social-economic forces which affect the use of the property, they affect its value. *Id.* at 179. Neither management nor work force in place is an intangible form of property.

A potential purchaser of an industrial plant may believe that plant management and specific groups of employees have a value above and beyond the labor and management available on the open market. This value arises from their training and experience. Presumably, they have learned to avoid mistakes others might make. They know the variables affecting maximum production. Such a management or work force in place would be more efficient than hiring and training new employees. Nevertheless, these elements of value cannot be treated separately.

If one wanted to treat them separately, a key question is how to measure their value. Available labor supply in a community is only one factor a buyer would consider as part of the overall economic circumstances. *Id.* at 40. How would an appraiser evaluate or determine the importance of, management or work force in place? Would it require a thorough evaluation of all personnel in the plant? This would entail reviewing the training, experience, health and accident records and grievances of all personnel. The appraiser would have to interview every employee to learn what their attitudes and expectations are. To be useful the results should be compared with other investigations of similar plants. Also, the appraiser would need to evaluate the level of automation and levels of discretion and judgment exercised by employees. These levels and actions would have to be compared to the same factors in different or similar plants. The appraiser would also need to consider whether any or all of these facts would be influenced by a new owner.

Would a new owner likely be union or nonunion? Would the new owner make any changes in policies and levels of supervision? If the property changed hands, would there be changes in the compensation structures, fringe benefits, incentive plans such as stock ownership or cash bonus plans? Would there be a change in supplies, level of quality control, rate of production and marketing strategies? Would any of these changes affect the attitudes and performances of the employees?

These and numerous other questions point out the extreme difficulty of assigning a specific value to management or work force in place as part of the fair market value of property. In the sales comparison approach, labor supply is only one of the many items for comparison. If the buyer and seller specifically negotiate and set a price on a contract provision retaining management or work force in place, then possibly a value can be attributed to those factors. However, any value assigned is not part of the market value of the property. It would simply be a separate determination of a service contract provision, as opposed to a sale provision. Therefore, it should not be deducted from any estimate of market value.

## CONCLUSION

Defendant requests a bright line test. It should not come as any surprise that no adequate bright line test has yet been devised. By this preliminary ruling, the court has only a modest hope that it will assist the parties in communicating with each other and the court in the trial of this matter.