# IN THE OREGON TAX COURT

## JONES INTERCABLE, INC.

*v.*

## DEPARTMENT OF REVENUE

(TC 3008)

## BIG PINE CABLE, CO., INC.

*v.*

## DEPARTMENT OF REVENUE

(TC 3009)

## NORTHLAND CABLE PROPERTIES - I
and Falcon Cable Systems Company

*v.*

## DEPARTMENT OF REVENUE

(TC 3010)

David L. Canary, Garvey, Schubert & Barer, Portland, represented plaintiffs.

James C. Wallace, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for plaintiffs rendered April 15, 1993.

### CARL N. BYERS, Judge.

Plaintiffs own and operate cable television (CATV) systems in Douglas County. They appealed the January 1, 1989, assessed value of their properties to defendant. When defendant did not act on those appeals within nine months, plaintiffs elected to treat them as denied and appealed to this court. *See* ORS 305.560(5). The cases were consolidated for trial. Thus, this controversy, which involves significant theoretical questions, is presented to the court without the benefit of defendant's administrative review.

## THE SUBJECT PROPERTY

A brief description of a typical CATV system will aid the reader in understanding this opinion.

Beginning with the order the signal is processed, the equipment consists of microwave antennae, satellite dishes and other antennae which pick up signals from broadcast television stations and satellites. At least one of the plaintiffs also uses television camera equipment to produce local programs. The signals thus received or produced are then sent by cable to the signal processing center for the system or "headend." The headend site is typically a separate location. Headend equipment consists of a processor and modulator for each broadcast signal and a video cipher, descrambler and processor for each cable signal. This equipment is used to clean up signals and sometimes change its frequency for use in the CATV system. One witness likened a headend to a pumping station for a water system. The headend equipment is set in racks and is readily movable.

The television signals are then distributed through large diameter trunk cables to major distribution points. Distribution cables, which are strung on utility poles or

buried underground, carry the signal from the major distribution points to various neighborhoods. "House drops" are lines which carry the signal from the distribution cable to each user's residence. A "tap" connects the house drop to the distribution cable. Amplifiers along the entire system boost the signal to maintain clarity. In addition to the above-described equipment, there is associated business equipment, such as service trucks and equipment, inventory, office furniture and fixtures. The value of this latter equipment is not in dispute.

## BUSINESS INTANGIBLES

A CATV system is a means of conveying a television signal. To operate such a system as a business involves more than just turning on the equipment. First, the operator must obtain a franchise. 47 USC § 541(b). A franchise grants the CATV operator authority to use public streets and rights-of-way for the CATV system and to sell television signals. 47 USC § 541(a). Typically, local governments grant nonexclusive franchises. By federal law, they may charge up to five percent of gross receipts as a franchise fee. 47 USC § 542(b). The franchise fees plaintiffs paid ranged from two to three and one-half percent of gross receipts.

In exercising their franchises, CATV operators place their cables underground or on utility poles, usually in conjunction with other utility lines. Most of plaintiffs' lines are on utility poles. In order to use these utility poles, which are owned by electric companies or telephone companies, CATV operators enter into pole attachment agreements. Under such agreements, the CATV operator pays the utility a fee for using the pole. For example, plaintiff Jones Intercable has a pole attachment agreement with a telephone company which calls for a fee of $3.38 per year for each pole used by Jones Intercable. Under these agreements, the costs of changing or moving the television cable, increasing the size of the pole to carry the CATV cable or moving the CATV's cable must be paid by the CATV system.

Finally, television signals received by CATV systems are protected by copyright laws. A CATV operator must pay for the right to use those signals. CATV operators enter into program agreements with producers of the signals. Under

these agreements, the CATV operator usually pays a negotiated fee per subscriber.

With all of the above agreements in place, the CATV business can sell subscriptions for its services. The subscribers pay a monthly fee for receiving cable television signals in their homes. The amount of the fee depends upon the level of programming and kinds of services selected. A typical CATV operator maintains a business office and a staff of technicians. The technicians respond to customer complaints and assure that the customer receives a clear signal.

## ISSUES

The issues concern what property is taxable as well as the value of that property. The appealed assessments include the value of plaintiffs' franchises. Defendant claims the franchises create a taxable possessory interest in public property which should be included in the plaintiffs' assessed values. Alternatively, defendant argues that the effects of the legal rights possessed by plaintiffs should be reflected in the value of plaintiffs' tangible, taxable assets.

Plaintiffs oppose defendant's position, claiming that it treats them like public utilities. Under ORS 308.505 and related statutes, certain designated properties, generally public utilities, are taxed on their going-concern value, including the value of intangibles such as franchises. Plaintiffs claim their CATV systems are not public utilities. Plaintiffs assert they are subject to property taxation only on their tangible real and personal property.

## NOT PUBLIC UTILITIES

■ CATV systems are not public utilities. They are not listed by ORS 308.515 as a type of business subject to taxation of intangibles. A proposal to have CATV systems added to the list of companies taxable under ORS 308.505 was rejected by the 1991 legislature. *See* HB 2556 (1991) (unenacted). Lastly, CATV systems are not regulated public utilities. 47 USC § 541(c) and *see* ORS 757.005 *et seq*.

## TAXABLE TANGIBLE PROPERTY

Except as otherwise provided, all real and tangible personal property within the state is subject to assessment and taxation. ORS 307.030. Real property is defined to:

"[I]nclude[] the land itself, above or under water; all buildings, structures, improvements, machinery, equipment or fixtures erected upon, above or affixed to the same; all mines, minerals, quarries and trees in, under or upon the land; all water rights and water powers and all other rights and privileges in any wise appertaining to the land; and any estate, right, title or interest whatever in the land or real property, less than the fee simple." ORS 307.010(1).

The statute defines the rights to be included in the value of the land, not the types of interests subject to taxation. For example, the right to develop land affects the land's value and should be included in the value of the land. However, development rights are not taxable *per se* or as a separate interest.

Tangible personal property is defined to "include[] all chattels and movables, such as boats and vessels, merchandise and stock in trade, furniture and personal effects, goods, livestock, vehicles, farming implements, movable machinery, movable tools and movable equipment." ORS 307.020(3).

There is no question that the above-described equipment and property of a CATV system is a mixture of real property and tangible personal property subject to taxation. The primary question in these cases is whether something more is involved because of the franchise agreements or the legal rights associated with the use of that property.

## POSSESSORY INTERESTS

Defendant asserts that plaintiffs' franchises grant them interests in public lands which are taxable possessory interests.

For purposes of property taxation, the need to identify and value a property interest less than fee simple arises only in connection with property which is otherwise exempt from tax.

"Where land is owned by a non-exempt landlord the legislature has seen fit, as a matter of administrative convenience in collecting the tax, to provide for one assessment against the landlord rather than to separately evaluate and assess the interests of the landlord and tenant. Under such a method of assessment the legal incidence of the tax is upon the landlord

but the assessment reflects the value of the interest of both landlord and tenant and the burden of the tax eventually falls, in part at least, upon the tenant in the form of higher rent. * * * If the landlord's reversionary interest is tax exempt the state may then choose to tax the lessee's separate interest. The lessee should not be permitted to escape the taxation of his interest merely because the reversionary interest of the landlord happens to be tax exempt." *Sproul et al v. Gilbert et al*, 226 Or 392, 421-22, 359 P2d 543 (1961) (citation omitted).

Oregon taxes publicly owned land used for private uses. For example, ORS 307.060 provides for taxation of property owned by the United States government which is leased or used by a private party. Likewise, ORS 307.110 broadly provides for taxation of property owned by the state or any of its local subdivisions which is used for private purposes. ORS 307.110(1) provides:

"[A]ll real and personal property of this state or any institution or department thereof or any county or city, town or other municipal corporation or political subdivision of this state, held under a lease or other interest or estate less than a fee simple, by any person whose real property, if any, is taxable, * * * shall be subject to assessment and taxation for the true cash value thereof uniformly with real property of nonexempt ownerships."

In *Sproul*, the Oregon Supreme Court held that a lease or right to possession in public property, which was relatively exclusive, constituted a possessory interest subject to tax under ORS 307.060. 226 Or at 405-06. The court distinguished such an interest from a license or nonexclusive right which it found was a nonpossessory interest not subject to tax. *Id.* at 423-24. Thus, despite the broad language of the statute, not every private use of public property is taxable.

Although *Sproul* dealt with ORS 307.060, it is clear from the statutes and subsequent legislative history that ORS 307.110 was intended to employ the same tests. *See, for example, Port of Coos Bay v. Dept. of Rev.*, 298 Or 229, 235, 691 P2d 100 (1984); *Holman Tfr. Co. et al v. Portland et al*, 196 Or 551, 557, 249 P2d 175, 250 P2d 929 (1952).

Defendant's rule construing ORS 307.110 is also consistent. OAR 150-307.110(1) provides:

"A lease or other possessory interest exists if the occupant is granted exclusive possession of a definitely described **area** for a specified period of time **(term)**." (Emphasis in original.)

■ The court finds that plaintiffs' interests in public properties under the franchises are not possessory interests subject to taxation under ORS 307.110. The rights granted to plaintiffs by the franchise agreements are not rights to any definitely described area and do not entitle plaintiffs to exclusive possession. They are mere licenses which permit plaintiffs limited use of public properties.

Defendant cites the case of *PGE Company v. Commission*, 2 OTR 222, 228 (1965), *rev'd on other grounds*, 249 Or 239, 437 P2d 827 (1968). In that case, this court held that PGE's interest was more substantial and possessory in nature than the rights involved in *Sproul* and was subject to taxation. The Oregon Supreme Court, on appeal, found "no distinction of substance between PGE's right to use the tribal lands and the rights usually enjoyed by a lessee of property from a tax-exempt owner." *P.G.E. Company v. Tax Com.*, 249 Or 239, 251, 437 P2d 827 (1968).

Here, plaintiffs' rights are less exclusive and less possessory than the interest in *Sproul*. The franchises are expressly nonexclusive. Which streets, which side of a street, or whether the cable is to be located above or below ground is not specified, limited or described. If a city wants to change a street, the CATV system must relocate at its own expense.

## TAX POLICY

■ Defendant argues that if the court finds plaintiffs' interests are not taxable possessory interests, nevertheless, they are taxable as a matter of policy. Questions of policy as to what property should be taxed are for the legislature, not the courts. The legislature clearly has power to tax all attributes of CATV systems, including their franchises. It does not have to resort to taxing some vague interest in public property. Defendant asks the court to extend a policy of the legislature beyond what the statutes provide. The court is expressly prohibited from doing so by the legislature itself. ORS 174.010. Defendant's citation of California cases addressing

these issues is of no consequence. California courts provide no authority for the interpretation of Oregon statutes.

## EFFECTS OF LEGAL RIGHTS

Defendant also asserts that the effects from the legal rights to operate a CATV system may be included in the assessed value of the system. When boiled down to its essence, defendant's argument merely claims that a franchise adds value to a CATV property and should be included in its assessed value. In making this argument, defendant ignores the court's ruling in *Boise Cascade Corp. v. Dept. of Rev.*, 12 OTR 263 (1992). That ruling gave the example of a yellow car which is tangible property and valued as such. *Id.* at 269. If an owner obtains a franchise to operate the car as a taxi, that franchise does not add value to the yellow car. The franchise is a right to operate a business, not the right to use a yellow car.

■ Plaintiffs do not need a franchise to turn their systems on and process television signals. However, they do need a franchise to install their cable on public property. The franchise does not add value to the installed equipment because the right to install equipment on public property is separate from the equipment itself. Reverting to the example of the yellow car, granting a taxi company a valuable easement over private land does not increase the value of the yellow car used as a taxi. The easement determines where the yellow car may be used, but it does not affect its value as a car.

■ Oregon statutes tax only tangible property. While ORS 307.010 includes all rights appertaining to the land, franchise rights do not fall in that category. Franchise rights are the right to conduct a business. They are not tied to any particular equipment or property. If property is destroyed or removed, the franchise rights continue in existence and are transferrable, separate and apart from any other property.

Many fast-food restaurants and other businesses utilize franchises in connection with their real and personal property. Nevertheless, these businesses are taxed only on the value of their real and personal property; the influence or effect of the franchise is not included in the assessed value.

As one writer has succinctly noted:

"The property tax should be limited to property value.

"* * * * *

"* * * A tax upon tangible property requires a valuation of rights in that property, rather than a valuation of business or franchise rights in connection with which such property is used." Youngman, *The Role of Valuation in Determining Ownership for Tax Purposes*, 43 Tax Lawyer 65, 80-81 (1989).

The ownership of property carries certain rights and responsibilities. Those rights control the relationship between the property and all persons. The owner has the right to possession, control and use of the property, including the right to income or benefits from the use of the property. The owner has the right to exclude others from possession, use or control of the property. Within limits, the owner has the right to change, modify, improve, add to or subtract from the property. An owner may sell, transfer or encumber the property.

These property rights, which are subject to taxation, must not be confused with rights which may be closely associated with the use of property but do not arise from the ownership or use of property. The right to install cable television equipment in city streets is granted in the abstract and without regard to any particular property. The property used by the franchisee to operate the CATV system could be owned by the franchisee, leased or borrowed. The franchisee could abandon one system, buy the system of a competitor and operate it using the same franchise. To the extent that the rights and responsibilities created by the franchise, pole attachment agreements, subscriber lists or programming agreements are property, they are intangible property and are not subject to taxation. Consequently, any value associated with those intangibles is not subject to taxation.

## APPROPRIATE VALUATION METHODS

In light of the above determinations, it is appropriate to determine which methods of valuation are appropriate in these cases.

■　The income approach is not usable or appropriate. The only available income information was largely deficient and pertained to the income of the operating businesses. Neither party submitted any information which reflected or measured the income attributable only to the taxable property, such as lease or rental income. Accordingly, there is no way to distinguish income attributable to the taxable tangible property from income attributable to the nontaxable business. *See Truitt Brothers, Inc. v. Dept. of Rev.*, 302 Or 603, 610, 732 P2d 497 (1987).

The next question is whether the sales comparison approach is appropriate. The court finds that the sales comparison approach cannot be used. The reason it cannot is found in defendant's own arguments. That is, the sales prices include the value of the franchises.

Defendant fails to distinguish business value from property value. A business may lose money and fail, but the property used in that business can still be valuable. Likewise, a business may be wildly successful without increasing the value of the property used in that business.

"In property taxation, uniformity is a significant and necessary consideration. Identical properties are to be assessed at identical values. Facts or circumstances not directly connected with the property, such as who owns the property, should not affect its assessed value." *Boise Cascade Corp. v. Dept. of Rev., supra*, 12 OTR at 266.

If a valuation method includes business value in the assessed value of the property, identical properties will not be taxed uniformly.

In these cases, the sales comparison method could be used only if the sales excluded franchises and other business agreements or if the business intangibles could be reasonably segregated. Here, none of the comparable sales exclude the effects of the franchise and none lend themselves to segregation.

The above discussion leaves the parties and the court with the use of the cost approach. Defendant claims the cost approach is not applicable because the principle of substitution is not operative in these circumstances. Defendant argues that the cost of replacing tangible equipment used in a

CATV system represents only 10 to 15 percent of the sale price of such systems. Since there is rarely, if ever, any competition, 85 to 90 percent of the value of a CATV system will escape taxation.

The court recognizes that once in place, a CATV system may have a natural monopoly.[1] However, the fact that a CATV system may constitute a natural monopoly merely emphasizes the point that what is involved is an operating business, not just tangible property. The sales prices of CATV systems are reflective of a business with a lock on the market. Just because the business has a monopoly does not mean the property used by that business has increased in value.

One of Oregon's statutory tests of value may help clarify the situation. ORS 308.205(1) provides that if property has no immediate market value, its true cash value is the amount of money that would justly compensate the owner for loss of the property. Under this test, if all the tangible, taxable property were destroyed, what would be the loss to the owner? The loss would certainly not be the value indicated by the sale price since the franchise, pole agreements, subscriber lists and all other business intangibles would still be in place. Rather, the loss would be simply the cost of replacing the tangible equipment.

Another way to look at it would be to emphasize that a CATV system is simply an assemblage of equipment which can transmit television signals. Such a system could be used by a large organization for training or education without conducting a business. A community college might install a system like plaintiffs' and provide signals free to the community in which it operates. Would the value of that system be less than plaintiffs' systems? There is no reason that plaintiffs' property should be assessed at a higher value, except reasons which are associated with operation of a business. In short, defendant seeks to combine the value of property with business values which are not taxable under Oregon statutes.

---

[1] This is undoubtedly the primary reason that efforts have been made to treat CATV systems like telephone companies, power companies and other utility monopolies.

Based on the evidence adduced by the parties, the court finds that the true cash values of the subject properties as of January 1, 1989, were:

| | |
|---|---|
| Northland Cable Properties | $451,000 |
| Jones Intercable, Inc. | $925,000 |
| Big Pine Cable Co., Inc. | $152,000 |

Plaintiffs to recover costs.