OPINION
 I. INTRODUCTION
This matter comes before the court for decision after trial. Plaintiffs Allen C. Huang and Margaret Lin (taxpayers), represented pro se by Allen C. Huang (Huang), request a reduction in the real market value (RMV) of three parcels of taxpayers' property for the 2007-08 tax year. Intervenor Jefferson County Assessor (the county), represented at trial by Alexa Gassner, requests that the court uphold the RMV determined by the Board of Property Tax Appeals (BOPTA). Defendant Department of Revenue tendered its defense of the case to the county. *Page 2 
 II. STATEMENT OF FACTS
The property at issue is land and a motel, located at 600 and 709 NE Highway 26 in Madras, Oregon. (Inv's Ex 2 at 4.) The motel occupies three parcels of land, identified as Accounts 10207, 11153, and 11652. (Inv's Ex 2 at 1, 6, 11.) On January 20, 2007, taxpayers entered into an agreement with William C. Hoffman Sr. (the seller) to purchase the motel, known at the time as "Hoffy's Motel." That agreement (the Sales Agreement) listed the total sales price as $2,200,000 and allocated $1,700,000 of that price to "Land and Buildings" and $440,000 of that price to "Trade [N]ame and Goodwill."[1] (Compl Ex B at 1; Pltf's Ex 1 at 1.) Following the purchase of the property, taxpayers changed the name of the motel to the "Madras Chateau Inn." (Inv's Ex 1 at 4.) The motel is neither AAA-rated nor a part of a national franchise.
In December 2007, taxpayers filed an appeal with BOPTA, requesting a reduction in the total RMV of the property for the 2007-08 tax year (the RMV) from $4,439,730 to $2,199,884 and a reduction in the total assessed value (AV) of the property for the 2007-08 tax year from $2,026,020 to $1,003,912. (Inv's Ex 2 at 5, 10, 15.) BOPTA reduced the RMV to the requested amount of $2,199,884 but sustained the total AV at $2,026,020, which was also the total maximum assessed value (MAV) of the property for the 2007-08 tax year. (Inv's Ex 2 at 1, 6, 11.)
Taxpayers appealed ruling of BOPTA to the Magistrate Division of the Oregon Tax Court, requesting that the Magistrate "lower [the] Assessment Valuation." (Compl Ex A at 2.) The Magistrate dismissed that appeal on the grounds that the court lacked authority to reduce the *Page 3 
MAV of the property, which, being lower than the RMV asserted, was the value that determined the AV of the property. (Compl Ex A at 4.) Seealso ORS 308.146(2) (stating that a property's AV shall be the lesser of the property's MAV or RMV).[2] Taxpayers timely appealed the Magistrate's decision, pleading that "the actual [RMV] for the above mentioned property is $1,700,000." (Compl at 1.)
Trial was held on June 2, 2009, in the Jefferson County Courthouse in Madras, Oregon. As evidence in support of taxpayers' requested reduction in the RMV, taxpayers provided the Sales Agreement. (Compl Ex B.) Taxpayers argued that the amount that the Sales Agreement allocated to land and buildings provided the most accurate evidence of the RMV, emphasizing that taxpayers paid a portion of the sales price for the purchase of trade name and goodwill, which was for the motel as a business, as opposed to the purchase of the land and buildings.
Huang testified that he did not know of the manner in which the seller ran the motel business at the time of the sale and, specifically, that Huang was unaware that the seller rented a portion of the motel as apartments to long-term tenants. When taxpayers purchased the property, they received a warning from the Jefferson County Public Health Department (the health department) that informed taxpayers that the health department would not allow taxpayers to operate a motel that rented rooms to tenants on a long-term basis. As a result, taxpayers evicted the long-term tenants. Taxpayers provided no evidence that, with due diligence, they or any other buyer would not have ascertained the manner in which the seller ran the motel.
In support of the county's position that the court should uphold the RMV determination of BOPTA, the county presented an appraisal (the county appraisal) prepared by Don Cox, chief appraiser for Jefferson County. (Inv's Ex 1 at 1.) *Page 4 
The county appraisal used indicators from four different appraisal approaches (a built-up cost approach, two income approaches and a comparable sales approach) to determine a RMV of $3,465,600. (Inv's Ex 1 at 1 and 12.) Cox testified at trial in support of the assessment of the county.
 III. ISSUE
Did taxpayers sustain their burden of proof in requesting a reduction in the RMV of the property?
 IV. ANALYSIS
Taxpayers argue that the RMV should be reduced from its present value of approximately $2.2 million to $1.7 million — the amount that the Sales Agreement allocated to land and buildings. The county disagrees, arguing that the approximate $2.2 million RMV determination by BOPTA should be upheld. To address those arguments, this court will first turn to what is required for the burden of proof, and second, turn to whether the evidence of the allocation of the sales price that the Sales Agreement provides is sufficient to sustain taxpayers' burden of proof.
1. Burden of Proof
As the party seeking affirmative relief, taxpayers bear the burden of proving that the RMV is different from the RMV presently on the tax roll. ORS 305.427. [0]A preponderance of the evidence, meaning the greater weight of evidence or the more convincing evidence, is sufficient to sustain the burden of proof. ORS 305.427; Feves v. Dept. of Rev.,4 OTR 304, 312 (1971). Thus, taxpayers must present the greater weight of evidence in support of the requested reduction in the RMV. *Page 5 
Burden of proof requires that taxpayers provide evidence to support their argument. The evidence that the taxpayer provides must be competent evidence of the requested RMV of a property in order to sustain the burden of proof. Woods v. Dept. of Rev., 16 OTR 56, 59 (2002). While there is no presumption that a tax assessment is valid, a taxpayer may not simply rest on his or her personal views. See id. If a taxpayer merely criticizes the county's position, the taxpayer will fail to sustain the burden of proving that the RMV of his or her property is something other than the value on the tax roll. Freitag v. Dept. of Rev.,19 OTR 37, 44 (2006). Further, evidence that is inconclusive or unpersuasive is insufficient to sustain the burden of proof. Reed v.Dept. of Rev., 310 Or 260, 265, 798 P2d 235 (1990). If the taxpayer bearing the burden of proof fails to sustain that burden, the court's final order will sustain the value on the tax roll. See id.
In the present case, taxpayers provided no expert testimony of the RMV. Nor did taxpayers present evidence of comparable sales, income, or cost to support a conclusion that the RMV was $1.7 million. The only evidence that taxpayers presented to support their argument was the Sales Agreement.[3] This court must therefore address whether the Sales Agreement provides sufficiently competent evidence of the RMV to sustain taxpayers' burden of proof.
2. Evidence of RMV: the Sale of the Subject Property and the Allocationof Goodwill
A recent sale of a property may provide competent evidence of the RMV of that property. Where the sale of the subject property is recent, voluntary and at arm's length, that sale provides persuasive evidence of the RMV of the property. Kem v. Dept. of Rev., 267 Or 111, 114,514 P2d 1335 (1973). In the present case, the county does not dispute that the seller and taxpayers *Page 6 
entered into a voluntary and arm's-length transaction, and nothing in the record demonstrates otherwise. Further, the sale was recent with regard to the assessment because taxpayers and the seller agreed to the sale on January 20, 2007, less than three weeks after the assessment date of January 1, 2007. (Compl Ex B.) Because the parties entered into the Sales Agreement
shortly after the assessment date and the county does not dispute that the sale was voluntary and at arm's length, the sales price is persuasive evidence of the RMV.
Nonetheless, taxpayers argue that the sale of the motel provides evidence that the RMV is $1.7 million, the amount that the Sales Agreement allocated to land and buildings, as opposed to the entire $2.2 million sales price. Taxpayers argue that they purchased the land and the buildings for $1.7 million, as evidenced by the Sales Agreement, and that they should not be taxed on the full sales price because $440,000 of that price was paid to purchase the trade name and goodwill of the business.
Goodwill is generally excluded from property taxation because goodwill is neither a part of real property nor tangible personal property, but instead arises from the business operations that are associated with those properties. Boise Cascade Corp. v. Dept. of Rev., 12 OTR 263, 267
(1991).[4] Goodwill is the value of a business above the value of its physical assets. See id. That value is attributable to such factors as expected profits, business location, reputation for good service, and other qualities that make the business attractive to individuals seeking its services. Buck v. Mueller, 221 Or 271, 285, 351 P2d 61 (1960). Because only real property and tangible personal property are assessed and taxed, and because goodwill is separate from those properties, the value of goodwill is not included in RMV.
Taxpayers must provide evidence to prove the value of goodwill just as taxpayers must *Page 7 
provide general evidence of the RMV. The Appraisal Institute has recognized that "[i]t may be difficult to separate the market value of the land and the building from the total value of the business, but such a division of realty and non-realty components of value may be required[.]" Appraisal Institute, The Appraisal of Real Estate 30 (13th ed 2008). Lewis v. Department of Revenue is a case in which the taxpayers similarly sought to exclude the value of intangible business value from the sale prices of individual condominium units that the taxpayers operated as a motel. 10 OTR 128 (1985), aff'd on other grounds, 302 Or 289,728 P2d 1378 (1986).[5] The court determined that where the motel, like the motel at issue in the present case, was not a part of a franchise, no amount may be deducted from the value of the property for intangible business value unless that amount is based upon specific evidence. Lewis,10 OTR at 130-31.
Taxpayers' only evidence demonstrating the existence of the trade name and goodwill is the allocation in the Sales Agreement of $440,000 of the price of the motel to those intangibles. No further evidence is provided to explain why either the buyer or seller of the property valued those intangibles at the amount listed on the Sales Agreement. To the contrary, taxpayers' actions and Huang's testimony demonstrate an absence of justification for such an allocation of the sales price.
Taxpayers' decision to change the name of the motel demonstrates that the trade name of the motel lacked value because it is unlikely that a purchaser of a business would change the name of the business after paying for the value of the trade name. Additionally, Huang testified that he did not know the manner in which the seller ran the business prior to the sale of the motel and that taxpayers were required to change the operations of the motel following the sale in order to continue to operate without the interference of the Health Department. Despite the lack of *Page 8 
information concerning the operations of the motel and the actual value of the motel's goodwill and trade name, taxpayers willingly paid the $2.2 million total price for the property. Taxpayers' actions and Huang's testimony fail to provide an explanation for why the Sales Agreement allocated the sales price among "Land and Buildings" and "Trade [N]ame and Goodwill," but, instead, cast doubt that the amount of the sales price allocated to "Land and Building" represented the RMV.[6]
Finally, in his closing remarks, Huang stated that the motel is "very low-end" and distinguished the motel from national franchise motels that are AAA-rated. Because the taxpayers' motel is not a part of a national franchise, a goodwill value cannot be implied in the value of the motel, but must be proven based upon specific evidence. See Lewis, 10 OTR at 131. Similar to the taxpayers in Lewis, taxpayers in the present case must present specific evidence proving the value of the motel's goodwill and trade name in order to exclude those intangibles from the amount that taxpayers paid for the property. Due to the lack of evidence demonstrating the reasoning for allocating a portion of the sales price to trade name and goodwill, the Sales Agreement is insufficient to prove taxpayers' requested RMV by the greater weight of evidence.
Without examining in detail the appraisal method used in the county appraisal, this court is concerned about the accuracy of an appraisal that generates an RMV of nearly $3.5 million for a property that sold in the same month as the assessment date for less than $2.2 million. A valuation conclusion of more than fifty-percent over the actual selling price casts serious doubt upon the county's method for appraising the property. However, the price at which the property *Page 9 
sold, and not the conclusion of the county appraisal, is the value the county requests this court to uphold.
 V. CONCLUSION
It is the opinion of this court, after reviewing the evidence, that taxpayers did not sustain their burden of proof under ORS 305.427. Taxpayers did not prove by a preponderance of the evidence that the RMV is $1.7 million. The RMV shall remain at its present value of $2,199,884. Now, therefore,
IT IS THE OPINION OF THIS COURT that taxpayers' appeal is denied.
Dated this ______ day of June 2008.
[1] The Sales Agreement allocated the remaining $60,000 of the total sales price to "Personal [P]roperty." (Compl Ex B at 1.)
[2] All references to the Oregon Revised Statutes (ORS) are to the 2005 edition.
[3] In oral argument, Huang also testified that the seller attempted to sell the motel business and property for $1.8 million 3 years before Huang purchased the motel. Huang further testified that the seller was unable to find a willing purchaser because this price was too high. Because Huang's testimony concerning the attempted sale is not supported by any independent evidence, this court gives the testimony very little weight.
[4] The value of tangible personal property and real property, including both land and structures, is subject to assessment and taxation for the purposes of Oregon property tax. ORS 307.030; ORS307.010(1)(b).
[5] The Oregon Supreme Court resolved the appeal without reaching the issue of valuing intangibles.
[6] This court has some concern that the reason for assigning particular values to "Land and Buildings," and "Trade [N]ame and Goodwill" in the Sales Agreement was for federal income tax purposes. The county's appraiser testified that appraisers do not place much value on allocations within sale agreements because those documents most often are prepared for federal income tax purposes rather than real estate purposes. In response, Huang stated that he did not know the seller's income tax purpose for the allocation, but Huang did not give any other explanation for why the Sales Agreement allocated the total price.